## LOCKE v. THE UNITED STATES.        1813.

*Absent....*TODD, J.

ERROR to the sentence of the Circuit Court for the district of Maryland, which condemned the cargo of the schooner Wendell, belonging to Locke, the Claimant, as forfeited to the United States.

*In a count in a libel upon the 50th sec. of the collection law of March 2d, 1799, for unlading goods without a permit, it is not necessary to state the time and place of importation, nor the vessel in which it was made, but it is sufficient to allege that they were unknown to the attorney.*

The libel contained 11 counts.

The 1st count charged that the goods between the 1st of June, 1808, and the day of filing the libel, at Boston, with intent to transport them to Baltimore, without a permit from the collector and naval officer of the port of Boston, were clandestinely laden on board the schooner Wendell, a vessel enrolled and licensed according to statute, whose employment was not then confined to the navigation of bays, sounds, rivers and lakes within the jurisdiction of the United States, nor exempted from the obligation of giving bond according to the provisions of the statute (the embargo law.)

*"Probable cause" means less than evidence which would justify condemnation. It imports a seizure made under circumstances which warrant suspicion.*

The 2d count charged that the goods being of foreign growth and manufacture and subject to the payment of duties, between the 1st of May, 1808, and the day of filing the libel were unladed without the authority of the proper officers of the customs, from on board some vessel to the attorney unknown, after she had arrived within four leagues of the coast of the United States, the said vessel being then bound from some foreign port or place, (to the attorney unknown,) to the United States.

The 3d count charged that the goods being of foreign growth and manufacture and subject to duties, were, without any unavoidable accident, necessity or distress of weather, unladen without the authority of the proper officers of the customs.

The 4th count charged that the goods, being of foreign growth and manufacture, and subject to the payment of duties imposed by the laws of the United States,

LOCKE *v.* U. STATES.

between the 1st of May, 1804, and the day of filing the libel, were imported from some foreign port or place to the attorney unknown, into some port of the United States to the said attorney unknown, in a certain vessel to the said attorney unknown, and were afterwards and before filing the libel unladed at the said last mentioned port from the said vessel without a permit from the proper officers of the customs of the last mentioned port.

The 5th count charged that the goods were imported into Boston and were falsely, and by a false name and denomination entered at the custom house of the port of Boston.

The 6th count charged that they were imported into a port of the United States, to the attorney unknown, and were falsely, and by a false name and denomination, entered at the custom house of such port.

The 7th count stated that the goods were of the manufacture of Great Britain, and were imported into New York, between the first of March, 1808, and the day of filing the libel, from some foreign port or place to the attorney unknown.

The 8th count stated that they were so imported into Boston.

The 9th count stated them to have been so imported into Philadelphia.

The 10th count averred them to have been so imported into Baltimore.

The 11th count stated them to have been so imported into some port of the United States, to the attorney unknown.

The 1st count was under the embargo law.

The 2d, 3d, 4th, 5th and 6th counts were under the collection law.

The other counts were under the non-importation acts

of *18th April*, 1806, *Vol. 8, p.* 80—*and 19th Dec.* 1806, LOCKE
*Vol. 8, p.* 219. *v.*

U.STATES.

HARPER, *for the Appellant.*

The first count, under the embargo act is understood
to be abandoned.

The 7th, 8th, 9th, 10th and 11th counts, are under the
non-importation acts of 18th April, and 19th December,
1806. There is no evidence of the importation of the
goods since the 2d Monday in December, 1807, the
time when those laws began to operate.

The 2d, 3d, 4th, 5th and 6th counts are under the gen-
eral collection law of *2d March*, 1799, *Vol.* 4, *p.* 325, *&c.*
The 5th and 6th however, charge acts not forbidden by
the law—so that the charges are reduced to those con-
tained in the 2d, 3d and 4th counts.

The 2d and 3d counts are under the 27th sec. of the col-
lection law, *Vol.* 4, *p.* 324. These counts are defective
in not averring that the unlading was before the vessel
had " come to the proper place for the discharge of her
cargo," which is an essential ingredient in the offence
described in that section. And all the counts are de-
fective in not stating where, how, when, and from what
ship the goods were unladen. These defects are as fa-
tal in a libel as in an indictment or declaration. There
is no authority for making a distinction. But if some
latitude be allowed in a libel, yet it ought to be certain
to a common intent in these respects.

If the libel be sufficient, yet it is not supported by
proof. There is no evidence of the time when the
goods were landed so as to show it to be contrary to
law.

But it was said in the Court below, that the *onus
probandi* was on the Claimant by the express provision
of the statute, *Laws United States, Vol.* 4, *p.* 391, sec. 71,
the words of which are " If the property be claimed by
" any person, in every such case the *onus probandi* shall
" be upon such Claimant; but the *onus probandi* shall
" lie on the Claimant only where *probable cause* is shewn

"for such prosecution." Probable cause is *prima facie* evidence, and whenever that is shown, the *onus probandi* falls of course upon the other party. A contrary construction would be against the common principles of law. What you charge, you must prove. Innocence is always to be presumed until there be at least *prima facie* evidence of guilt. This construction is fortified by the 43*d section* of the collection law. *Vol. 4, p.* 350. Which provides that if distilled spirits, wines and teas be found unaccompanied by a certificate of importation, it shall be *presumptive evidence* that the same are liable to forfeiture. This presumptive evidence can be no other than *probable cause* of seizure: and probable cause must mean presumptive evidence. In the present case there is no such probable cause. The circumstances which are supposed to excite suspicion, are 1. That there was a variance in the manifest—2. That the names of the shippers and consignees were fictitious—3. That there was no proof of their entry into Boston, and 4th that the original marks had been effaced upon many of the packages.

It is not stated where this manifest was found. The variance is very trifling. There could have been no fraud upon the United States intended by using fictitious names, because the goods were as liable to seizure as if they had been shipped in the name of the Claimant. It was done to screen the goods from his creditors, he being in embarrassed circumstances at that time—as appears from the deposition of W. French. The want of a certificate of entry is only evidence that they might have been improperly imported, not that they were. The erasure of the original marks could not screen the goods from seizure—part of the original marks remained. None of these circumstances constitutes that *prima facie* evidence which throws the burthen of proof upon the Claimant. But this provision respecting the *onus probandi* applies only to the importer himself—and as to him it is not unreasonable—he knows where to look for the evidence of their correct importation. But it is unreasonable to apply the rule to a purchaser. It would in many cases be impossible for him to obtain the necessary evidence. There is no evidence that the Claimant was the importer of these goods.

PINKNEY, *contra.*

There is some ground to say that these goods ought to be condemned under the non-importation act of 1806. It is clearly proved that they are of British manufacture; they must therefore have been imported—and some of the articles appeared to be of a very recent fabric. These circumstances connected with the total want of proof on the part of the Claimant, create very strong suspicions, if they do not amount to positive proof.

But under the collection law, especially upon the 4th count, which is founded on the 50th section of that act, the case is quite clear.

It is not necessary in a libel for unlading contrary to law to state from what vessel, nor at what time, nor in what place, the goods were unladen. It would generally be impossible to prove the circumstances; and if averred, they must be proved. Suppose that the Claimant had confessed that the goods were smuggled, but had not said in what vessel, nor when, nor where—the evidence of his confession would have been sufficient to condemn the goods although he had omitted to state these immaterial circumstances. It is sufficient to aver that they were landed from some vessel, and at some place within the United States, unknown to the prosecutor, and within the time when the law was in force. The Claimant has sufficent notice that the United States mean to rely on the general ground of suspicion, and on the shifting the *onus probandi*, and must come prepared to remove the suspicion. Of what use is the provision respecting the *onus probandi*, if the law was so before? It is perfectly nugatory if probable cause means *prima facie* evidence. It must mean something less than evidence—it means reasonable grounds of suspicion.

Another objection as to form is, that the libel does not aver negatively that the vessel had not arrived at her port of delivery. It is not necessary to show this even by intendment—but it does necessarily appear from the facts stated in the count. It is sufficient to set forth the great leading facts of the case, and to aver them to be done contrary to the statute. By referring to the statute he is informed as to the particulars alleged against him.

'The variance in the manifest is immaterial ; but the use of fictitious names for shippers and consignees is a circumstance of strong suspicion. It was probably done to blind the eyes of the custom house officers, by dividing the ownership into 13 or 14 parts.

HARPER, *in reply.*

If the U. States are permitted to state the time and place so vaguely, yet they ought to state all the circumstances which constitute the offence. It must be stated that the fact was committed within some district of the U. S. The offence is unlading before she came to her port of delivery. Whatever is necessary to be averred, must be positively averred ; it cannot be made out by inference or intendment. It is not sufficient to state that it was done contrary to the statute. It must be shown how it was done, that the Court may judge whether the act was unlawful or not.

*Feb. 19th....*MARSHALL, *Ch. J.* delivered the opinion of the Court as follows:

This is a writ of error to a judgment of the Circuit Court for the district of Maryland, affirming a judgment of the district Court, which condemned the cargo of the *Wendell,* as being forfeited to the United States.

The first point made by the Plaintiff in error, is that the information filed in the cause, is totally insufficient to sustain a judgment of condemnation.

The information consists of several counts, to all of which exceptions are taken. The Court however, is of opinion, that the 4th count is good, and this renders it unnecessary to decide on the others.

That count is founded on the 50th section of the collection law, and alleges every fact material to the offence.

It is however objected to this count, that the time and place of importation, and the vessel in which it was made, are not alleged in the information, but are stated to be unknown to the attorney.

These circumstances are not essential to the offence, nor can they, from the nature of the case, be presumed to be known to the prosecuting officer.

The offence is charged in such a manner as to come fully within the law, and is alleged to have been committed after the passage of the act, and before the exhibition of the information. This allegation, in such a case, is all that can be required.

The 4th count of the information being sufficient in law, the Court will proceed to examine the testimony adduced to support it.

It is proved incontestibly that the goods are of foreign manufacture and consequently have been imported into the United States.

The circumstances, on which the suspicion is founded that they have been landed without a permit, are,

1st. That the whole cargo in fact, belongs to the claimant, and yet was shipped from Boston in the names of thirteen different persons, no one of whom had any interest in it, or was consulted respecting it, and several of whom have no real existence.

2d. That no evidence exists of a legal importation into Boston, the port from which they were shipped, to Baltimore, where they were seized.

3d. That the original marks are removed, and others substituted in their place.

The counsel for the claimant has reviewed these circumstances separately, and has contended that no one of them furnishes that solid ground of suspicion which can create a presumption of guilt and put his client on the proof of his innocence. That they are either indifferent in themselves—mere casualties—or are reasonably accounted for.

To the employment of fictitious names as shippers, he says, that if the circumstance be not totally immaterial, it is sufficiently accounted for by the deposition of Wih

liam French, who says, " he understood that the claimant in the cause, was in embarrassed circumstances some time before the shipment of these goods, and that he has understood and believes from general report that, for the purpose of preventing his property from being attached, he was in the habit of shipping his property in the names of other persons."

The Court is of opinion that the circumstance is far from being immaterial. It is certainly unusual for a merchant to cover his transactions with a veil of mystery, and to trade under fictitious names. The manner in which this mysterious conduct is accounted for, is not satisfactory. It does not appear that his creditors were in Baltimore, or would be more disposed to attach his property in that place than in Boston, and it does not appear that in Boston the names of others were borrowed to protect his property from his creditors. The fact itself, if true, might be proved by other and better testimony. This habit might have been proved by his clerks.

An attempt is made to account for the circumstance that the goods were not regularly entered at the custom house of Boston, by the testimony of the same William French, who deposes that goods to a large amount are transported by land to Boston, and if intended for domestic consumption, are generally unaccompanied by certificates of having paid the duties. The inference is therefore considered as a fair one, that these goods may have paid the duties at some other port where they were purchased by Mr. Locke, and transported by land to Boston.

The Court is not satisfied with this inference. Goods in packages, unaccompanied by certificates of having paid the duties, are always liable to be questioned on that account. Large purchasers therefore, even where re-exportation is not intended, would choose to be furnished with this protection. It is a precaution which costs nothing, and which a prudent merchant will use. The presumption therefore, is always against the person who is in possession of goods in the original packages without these documents. This presumption ought to be removed, and may be removed, not by proving

that cases have existed where a purchaser of goods, that have been regularly entered, has omitted to furnish himself with certificates, but that the particular case may reasonably be supposed to be of that description. The actual importation, or the actual purchase of the very goods, or of goods of the same description, may be proved, and ought to be proved by a person who has been so negligent as not to obtain certificates that would exempt them from forfeiture.

The alteration of the original marks has been treated as an immaterial circumstance because no criminal motive can be assigned for it. This alteration, it is said, was not calculated to impress the revenue officers with the opinion that the duties had been paid, and is therefore not to be considered as made with that motive.

Certainly the alteration was not made without a motive. Men do not usually employ so much labor for nothing. If they use mystery without an object, they must expect to excite suspicion.

To do away that suspicion they ought to shew an object.

In the present case, it is not improbable, that the motive was to relieve the goods from the suspicion of being imported in violation of the then existing prohibitory laws. One witness, who deposes that the goods were of British manufacture, also deposes that he never saw goods imported from Great Britain with such marks as those which were found on the goods of Mr. Locke. In the absence of other motives, the mind unavoidably suggests this.

If these circumstances were even light, taken separately, they derive considerable weight from being united in the same case. If these goods have really paid a duty, it is peculiarly unfortunate that they should have been shipped without certificates of that fact, under fictitious names, from a port where they were not entered, and that the marks of the packages should have been changed. It is peculiarly unfortunate, that these circumstances cannot be explained away by showing that the goods have been entered elsewhere, or even

LOCKE
*v.*
U.STATES.

that the claimant has purchased such goods from any person whatever.

These combined circumstances furnish, in the opinion of the Court, just cause to suspect that the goods, wares, and merchandize against which the information in this case was filed, have incurred the penalties of the law.

But the counsel for the claimant contends that this is not enough to justify the Court in requiring exculpatory evidence from his client. Guilt, he says must be proved before the presumption of innocence can be removed.

The Court does not so understand the act of Congress. The words of the 71st section of the collection law, which apply to the case, are these : " And in ac- " tions, suits, or informations to be brought, where any " seizure shall be made pursuant to this act, if the pro- " perty be claimed by any person, in every such case " the *onus probandi* shall beupon such claimant." " But the " *onus probandi* shall be on the claimant, only where pro- " bable cause is shown for such prosecution, to be judged " of by the Court before whom the prosecution is had."

It is contended, that probable cause means *prima facie* evidence, or, in other words, such evidence as, in the absence of exculpatory proof, would justify condemnation.

This argument has been very satisfactorily answered on the part of the United States by the observation, that this would render the provision totally inoperative. It may be added, that the term " probable cause," according to its usual acceptation, means less than evidence which would justify condemnation ; and, in all cases of seizure, has a fixed and well known meaning. It imports a seizure made under circumstances which warrant suspicion. In this, its legal sense, the Court must understand the term to have been used by Congress.

The Court is of opinion that there is no error, and that the judgment be affirmed with costs.