UNITED STATES of America,
Plaintiff-Appellee,

v.

David BUSH, Arthur Randall Sanders, TWA, Inc., and Richard Zane (true name—Atila Caliskn), Defendants-Appellants.

No. 77–5097.

United States Court of Appeals,
Fifth Circuit.

Oct. 30, 1978.

Glenn Zell, Atlanta, Ga., for defendants-appellants.

Jerome J. Froelich, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before AINSWORTH, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

In this appeal, four defendants, TWA, Inc., Arthur Randall Sanders, David Bush, and Richard Zane, attack convictions for use of a common carrier to ship obscene material, interstate shipment of obscene material, and conspiracy. 18 U.S.C. § 371, § 1462, § 1465. Our ruling in this case has been held in abeyance pending Supreme Court action on a jury instruction issue

presented by *Pinkus v. United States,* 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293 (1978). Although the result in *Pinkus* requires reversal of the convictions in this case, an issue of substantial importance remains for our consideration.

The facts of the case are not complex. On May 16, 1974, an employee in the shipping department of Delta Airlines discovered several damaged cartons. Delta's customer service representative, checking the air bill, determined that defendant TWA was to receive the six carton shipment at its Atlanta warehouse. Although the cartons were described as containing breaker conduits, the broken cartons revealed small boxes of eight millimeter film. On the covers of the film boxes were photographs explicitly depicting various sexual activities. The titles, prices, and other relevant material were prominently displayed on the cover. Additionally, at least one of the boxes carried a brief description of the film contained within. Delta notified the FBI, which sent an agent the following day. The agent saw the damaged cartons as well as the smaller film boxes. The airline employees made copies of the covers of the three film boxes, and these copies were given to the FBI agent. The agent then applied for a search warrant. The affidavit for the warrant contained the following description of the material to be seized:

Six cardboard cartons containing obscene material, i. e., boxes with pictures thereon depicting sexual intercourse and fellatio, and having thereon other obscene, lewd, lascivious, and filthy writing, said boxes containing motion picture film which is obscene, lewd, lascivious and filthy . . .

The three copies of the film covers were attached to the affidavit. Without more information, the magistrate determined that probable cause existed, and issued the warrant to be executed at TWA's warehouse. While executing this first warrant, the agents discovered additional material of a similar nature, including films, magazines, and other objects. These discoveries led to other seizures which are not involved in this appeal. Charges were subsequently brought against appellant TWA, Inc., and several officers or employees including the three additional appellants, Bush, Sanders, and Zane. Appellants were convicted on all counts.

■ The convictions are challenged on several grounds. First, all four appellants contest the seizure of the six cartons and the subsequent admission at trial of the three films charged in the indictment. Before reaching the search issue, however, we must address the government's contention that three appellants lack standing to contest the constitutionality of the search. The government concedes the standing of the corporate appellant, TWA, but urges that the individual appellants Bush, Sanders, and Zane, lack the requisite interest. We agree. Appellants Zane and Bush did not make a timely motion to suppress and thus cannot raise that issue in this forum. Appellant Sanders did make a timely motion pursuant to Fed.R.Crim.P. 41(e). The availability of that rule is limited to "aggrieved persons;" therefore, unless Sanders is an aggrieved person, he cannot now complain that the evidence was illegally seized.

■ A careful review of the record reveals that Sanders failed to meet any of the clearly defined tests for standing. Sanders was not in the warehouse at the time of the search. He does not have any "legitimate interest" in the films seized. *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). In fact, except for the assertion that Sanders does have a "legitimate interest" in the things seized, the record is totally devoid of evidence supporting his claim of any interest in the property. The films were sent to TWA, and it is TWA that has the requisite interest in the films. The interest of a stockholder and corporate officer in the property of the corporation is not sufficient to provide that stockholder, in his individual capacity, with standing. *United States v. Britt,* 508 F.2d 1052 (5th Cir. 1975). Although it is clear that the defendant's standing is not controlled by property interests, *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18

L.Ed.2d 782 (1967), defendant Sanders has failed to establish any interest in the films. Nor was he charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure. *Brown, supra,* 411 U.S. at 229, 93 S.Ct. at 1569, 36 L.Ed.2d at 214; *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). There is nothing in the record even remotely suggesting that the search was directed at Sanders, as distinguished from corporate activity generally; therefore, it cannot be said that Sanders was the victim of the search. *Jones, supra; United States v. Hunt,* 505 F.2d 931 (5th Cir. 1974). Finally, despite Sanders' protestations to the contrary, his mere status as a corporate officer is insufficient to establish standing.

This court, in a similar case, denied a corporate officer standing. In *United States v. Britt,* 508 F.2d 1052 (5th Cir. 1975), the documents seized were not prepared by the defendant; the area searched was a storage area, not the defendant's personal working area; the defendant was not on the premises at the time of the search; and most importantly, the search was directed at corporate activity generally and not at the corporate officer personally. We feel that the factors which led this court to deny standing to the corporate officer in *Britt,* require that Sanders be denied standing in this case.

■ All agree, however, that the search issue was properly raised by TWA. This corporate appellant raises several arguments for barring admission of the films into evidence. Turning to the first contention, we address the appellant's assertion that the standard of probable cause applied in issuing the warrant failed to comport with the substantive obscenity test set forth in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973):

(a) Whether 'the average person, applying contemporary community standards' would find that the work, *taken as a whole,* appeals to the prurient interest:

. . .

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and

(c) whether the work, *taken as a whole,* lacks serious literary, artistic, political, or scientific value.

415 U.S. at 24, 93 S.Ct. at 2610, 37 L.Ed.2d at 431 (emphasis added). Because the final determination of obscenity requires that a work be examined "as a whole," the Ninth Circuit recently ruled that a similarly exacting standard controls the analysis of probable cause:

A single photographic print or 'out-take' from a roll of motion picture film might establish probable cause to believe that the film as a whole will meet the second, or in a rare case, the first part of the test, but an 'out-take' could never establish probable cause to believe that the film 'taken as [a] whole, lacks serious literary, artistic, political, or scientific value.'

*United States v. Tupler,* 564 F.2d 1294, 1297 (9th Cir. 1977).

In the present case, the appellant urges that the magistrate, who relied almost entirely upon depictions of the film covers, lacked a sufficient basis for ascertaining probable cause. In essence, he argues that in determining probable cause for obscenity, you cannot tell a work by its cover.

Although we suggest that the position of the Ninth Circuit may be unduly demanding, *compare, e. g., United States v. Pryba,* 163 U.S.App.D.C. 389, 401–402, 502 F.2d 391, 403–404 (1974), we are not required to confront their analysis directly because the present case is distinguishable from *United States v. Tupler, supra.* In that case, the magistrate considered only an outtake on the cover of the film. In this case, at least one of the covers of films seized contained significantly more than a single photograph to inform the magistrate. The cover of "The Stripper" depicted not only explicit sex but also contained a 50-word summary of the contents of the film. This description, which appeared to summarize the work "as a whole," itemized in crude terms

an unrelieved series of sexual acts. Nowhere does this summary give the slightest hint of serious literary, artistic, political or scientific value. By the picture and words on the cover of "The Stripper," the distributor was declaring that the sum and substance of the film constituted unmitigated obscenity. The magistrate was entitled to take him at his word. "(T)he fact that each of these publications was created or exploited entirely on the basis of its appeal to prurient interests strengthens the conclusion that the transactions here were sales of illicit merchandise, not sales of constitutionally protected matter." *Ginzburg v. United States,* 383 U.S. 463, 474–475, 86 S.Ct. 942, 949, 16 L.Ed.2d 31, 49 (1966).[1]

In addition to the picture and words of "The Stripper," the magistrate was presented with copies of two other covers of films found in the opened box. These film covers, presented dauntingly explicit sex and thus further supported the finding of probable .cause. Moreover, the allegedly obscene films were found in a carton falsely labeled as containing breaker conduits and switches. This apparent deception also suggested that wrongdoing might be underway. Therefore we hold that the magistrate had sufficient probable cause to believe that obscenity laws were being violated. "While probable cause, in this context, means something more than a mere suspicion that appellant was violating the federal obscenity laws, it does not require evidence that would support a conviction." *United States v. Rich,* 407 F.2d 934, 937 (5th Cir. 1969). "There only need be a probability of criminal activity rather than a prima facie showing . . ." *Id* at 936.

The appellant further argues that even if probable cause sufficed for a search of the accidentally opened carton, the opening and examination of the five boxes remaining in the shipment was improper. There is certainly a strong counter argument to this contention. All six cartons were part of the same shipment; all six were listed as containing breaker conduit switches. Not only did one of these cartons break open to reveal allegedly obscene films, but a Delta Airlines official examined two others to find similar films. "It is axiomatic that an affidavit for search warrant is to be interpreted in a common sense and realistic manner, and the magistrate's finding of probable cause should be sustained in doubtful or marginal cases." *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir. 1977). In any event, the appellants' convictions were based on films found in the original carton so the contents of the other five could inflict no remediable harm.[2]

Rejecting appellants' argument as to the sufficiency of probable cause, we next consider whether the scope of the seizure exceeded First Amendment limits.

1. Concededly, in promoting sales, an advertiser or distributor might exaggerate what he believes are the most marketable features of a film to the exclusion of its artistically significant aspects. We emphasize, however, that in probable cause determinations, the magistrate deals in likelihoods and need not rely upon certainties. The depictions and words on the cover of a work may not be dispositive of the contents, but they are· surely probative.

2. We also reject appellants' contention that the search warrant authorized an unconstitutional general search. The magistrate permitted a search and seizure of six boxes in a shipment. This is a far cry from the wholesale empowerment to seize Communist paraphernalia that the Supreme Court invalidated in *Stanford v. Texas,* 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). Distinguishing such an unfettered discretion from a situation more like the present case, the Second Circuit said, "The warrants could well have commanded, for example, the seizure of films 'depicting natural or unnatural sexual acts' instead of giving the instant broad conclusory command, and this would have restricted significantly the discretion of the executing officials." *United States v. Marti,* 421 F.2d 1263, 1268 (2d Cir. 1970). A general search and seizure is a fourth amendment violation. A search and seizure of more materials than needed for law enforcement purposes could fall short of constituting a general search and yet offend first amendment strictures. Such a situation may exist in the present case. As discussed earlier, however, the remedy would lie in securing the prompt return of the improperly held materials, not suppressing all of the evidence seized. *Compare Stanford v. Texas,* supra, *with United States v. Sherwin,* infra.

Even a seizure properly anchored in probable cause can offend constitutional constraints when media of expression, such as movie films, are implicated. "(T)he effect of execution of a warrant for search and seizure . . . is precisely the same *ex parte* total suppression as that condemned in *Marcus v. Search Warrant,* 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 and *A Quantity of Books v. Kansas,* 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809." *Overstock Book Co. v. Barry,* 436 F.2d 1289, 1295 (2d Cir. 1970). Courts have emphasized that presumptive free speech materials are qualitatively different from other kinds of alleged contraband. See *Roaden v. Kentucky,* 413 U.S. 496, 504–505, 93 S.Ct. 2796, 2801, 37 L.Ed.2d 757, 765 (1973). In the present case, the seizure of all six cartons of films may arguably have exceeded the requirements of law enforcement officials seeking evidence to pursue criminal charges. "(S)eizing films to destroy them or to block their distribution or exhibition is a very different matter from seizing a single copy of a film for the bona fide purpose of preserving it as evidence in a criminal proceeding, particularly where, as here, there is no showing or pretrial claim that the seizure of the copy prevented continuing exhibition of the film." *Heller v. New York,* 413 U.S. 483, 492, 93 S.Ct. 2789, 2794–95, 37 L.Ed.2d 745, 754 (1973). Thus, in the present case, although at least some films could be seized for evidentiary purposes because there was sufficient probable cause of obscenity violations, other films may have been seized without justification. This could not compel the evidentiary exclusion of those films that were properly seized. "(W)hen materials are seized in violation of the first amendment, the appropriate remedy is return of the seized property, but not its suppression as evidence at trial." *United States v. Sherwin,* 539 F.2d 1, 8 n.11 (9th Cir. 1976). *See also United States v. Womack,* 166 U.S.App.D.C. 35, 49–50 n.48, 509 F.2d 368, 382–383 n.48 (1974); *United States v. Cangiano,* 464 F.2d 320, 328 (2d Cir. 1972), *vacated on other grounds,* 413 U.S. 913, 93 S.Ct. 3047, 37 L.Ed.2d 1023 (1973), *on remand,* 491 F.2d 905 (2 Cir.) *cert.*

*denied,* 418 U.S. 934, 94 S.Ct. 3223, 41 L.Ed.2d 1171 (1974). *Cf. United States v. Alexander,* 428 F.2d 1169, 1176 (8th Cir. 1970) (order for return to be without prejudice to the district court to compel delivery of single copies for use in criminal prosecutions); *Tyrone, Inc. v. Wilkinson,* 410 F.2d 639, 641 (4th Cir. 1969); *Metzger v. Pearcy,* 393 F.2d 202, 204 (7th Cir. 1968). We therefore hold that the lower court properly admitted the controverted films into evidence.

■ Appellants also challenge the propriety of the portion of the jury instructions defining "community." Specifically, the jurors were told:

> In determining the common conscience of the community you are to consider the community as a whole, young and old, educated and uneducated, religious and the irreligious.

In light of *Pinkus v. United States, supra,* we conclude that the charge as given was erroneous. In *Pinkus,* the Supreme Court was asked to determine the propriety of a charge virtually identical to the one given in the instant case. The *Pinkus* jury was instructed:

> to consider the community as a whole, young and old, educated and uneducated, the religious and the irreligious, men, women and children, from all walks of life.

436 U.S. at 296, 98 S.Ct. at 1811 [emphasis omitted]. The charges are virtually identical, the only difference being the phrase "men, women, and children, from all walks of life" which was included in the *Pinkus* charge. Reversing the conviction, the Supreme Court emphasized its intention

> to make clear that children are not to be included . . . as part of the 'community' as that term relates to the 'obscene materials.'

436 U.S. at 297, 98 S.Ct. at 1812. Crucial to their reasoning was the fear

> that a jury conscientiously striving to define the relevant community of persons, the 'average person,' . . . by whose standards obscenity is to be judged would reach a much lower 'average' when

children are part of the equation than they would if they restricted their consideration to the effect of allegedly obscene materials on adults.

436 U.S. at 298, 98 S.Ct. at 1812 [citations omitted].

Although the trial court in the instant case did not expressly instruct the jury to consider children, he did not give an instruction which "restricted their consideration to the effect of allegedly obscene materials on adults." The phrase "young and old" contained in the trial court's charge provides a jury ample freedom to consider children, and thus does not completely avoid the danger, emphasized in *Pinkus,* that "the adult population [will be reduced] to reading only what is fit for children." 436 U.S. at 298, 98 S.Ct. at 1812, citing *Butler v. Michigan,* 352 U.S. 380, 383–84, 77 S.Ct. 524, 525–26, 1 L.Ed.2d 412, 414 (1957). By failing to limit, in some way, the jury's consideration to adults, the trial court erroneously instructed the jury, and committed reversible error.

Appellants raise several additional errors. We have carefully considered those that are not mooted by our reversal, and find the remaining contentions to be without merit.

REVERSED and REMANDED.