**VIDEO NEWS, INC., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–00824–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 5, 1990.

Rehearing Denied June 6, 1990.

Rokki Ford Roberts, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Linda West, Asst. Dist. Atty., for appellee.

Before SAM BASS, DUNN and O'CONNOR, JJ.

## OPINION

DUNN, Justice.

This is an appeal from a conviction of possession with the intent to promote obscene material. After the jury found appellant guilty, the court assessed punishment at a $5,000 fine.

On September 14, 1987, Officer T.K. Cox, a five-year veteran of the pornography squad of the Vice Division of the Houston Police Department, and two other officers went into the Eastex 24 Hours News Bookstore, which is owned by appellant. That same day, Officer Cox prepared an affidavit describing the various types of sexually explicit merchandise on sale there. Also described were the sexual activities depicted on four magazines that the officers purchased. The affidavit states that the four magazines, *Ass Is Nice, Raw Meat, One Size Fits All, Part I,* and *Swedish Erotica # 67,* in their entirety, are being tendered for the court's review; that the store has an adult arcade area consisting of small booths where movies are shown of males and females, males and males, and females and females, engaged in acts of oral sodomy, sexual intercourse, anal sodomy, and male ejaculation; that the magazine racks are broken down into sexual preference groups including masturbation, lesbian, bondage, swingers, couples, and marital aids; that neither on this, nor any prior occasion, has he observed anything of a nonsexual nature on sale in the bookstore, which leads him to believe that its primary purpose is the promotion of sexually obscene material; that records indicate the store has received 51 citations for arcade

ordinance violations, 30 arrests for arcade ordinance violations, and 20 charges on various clerks for promotion of obscenity; that he has viewed many of the magazines in the store and seen that they, "have always contained sexual depictions similar to those described above." In the affidavit, Officer Cox also states that he has observed "nothing of a nonsexual nature in their interior."

Based on Cox's affidavit, the magistrate issued a search warrant. In its preamble, the magistrate states that he has reviewed the four magazines, and finds that Cox has probable cause for the belief he expresses in his affidavit. He directs the police to seize the magazines bearing the titles of the four he reviewed and instructs the police to:

> video tape the front and back covers of the magazines found in the adult section therein containing like depictions to those listed above which were originally purchased to include: oral sodomy, actual intercourse, anal sodomy, and actual exhibition of male and female genitals, and then proceed to video tape the bookstore, itself, and shall then bring said videotape back for my review within a reasonable period of entering said bookstore....

The next day, September 15, 1987, Cox and the other officers returned to appellant's store to execute the warrant. Cox then completed a second affidavit, stating his belief that appellant was in possession of numerous magazines in violation of Tex. Penal Code Ann. sec. 43.23 (Vernon 1989) (the commercial obscenity statute) in that the front and back covers of the magazines which the officers videotaped, pursuant to the magistrate's warrant, "depict sexual acts of sexual intercourse, oral sodomy, anal sodomy, and male ejaculation on the front and back covers." The affidavit then lists the titles of the 83 magazines whose front and back covers they videotaped. These included titles such as *C cksuckin Buddies Special, Sextraverts #18, Wanna F k, Basic Sleaze, Double F ked Special #2, Guys Who F k Tight Black P y, Chain Gang Bang, Anal Bang,* and *Lesbo Trio.* The affidavit states that the videotape of the front and back covers of these magazines is attached

and incorporated by reference. Reference is also made to the prior day's purchase of the four magazines. The affidavit continues:

> Further, your affiant has observed the various clerks on the above dates sell magazines to customers of the store, and thus believes that said magazines are being possessed with intent to promote same.
>
> Your affiant has observed no materials for sale of a nonsexual nature in the adult area of said bookstore at any time and believes the sole and only purpose of this area is the promotion of sexually obscene materials.
>
> Your affiant has been assigned to the Pornography Squad of the Vice Division of the Houston Police Department for five years and has viewed hundreds of magazines purported printed by the same manufacturers and found them always to contain sexual depictions similar to those described above and as found on the covers of those in Exhibit "A" [the attached video tape].
>
> Wherefore, based on the above, your affiant believes that the above listed magazines are obscene within the meaning of 43.23 of the Texas Penal Code and that same *constitute evidence* of the offense of possession of obscene material with intent to promote, and therefore seeks a search warrant authorizing the seizure of said magazines and those that are duplicates of said magazines. (Emphasis added.)

On the same day, the court reviewed the second affidavit, and issued a second search warrant finding probable cause to support Officer Cox's belief that the 83 magazines were obscene, that appellant was in possession of them in violation of the commercial obscenity statute, and that the magazines *constituted evidence* of the offense. He commanded the police to seize the magazines, which were listed by title, and their duplicates, and bring them to him. He further instructed the officers to leave a copy of the warrant with the person in charge of the bookstore, notifying him of a hearing to be held in three days, i.e.

September 18, 1987. The record does not reflect whether such a hearing occurred. However, there are references by the State to this hearing in the transcript of the pretrial hearing and the trial itself.

Cox and the other officers returned to appellant's bookstore, and pursuant to the warrant, seized all copies of the identified magazines, totalling approximately 300 volumes.

The information, on which the parties went to trial, was filed January 15, 1988, and enumerated, by title, 78 of the 83 magazines that were seized.

On April 19, 1988, appellant filed a motion to quash the information on various constitutional grounds. Appellant also filed a motion to suppress the introduction of the magazines into evidence and for their return, asserting police violations of its first, fourth, and fourteenth amendment rights under the U.S. Constitution. At the pretrial hearing on June 2, 1988, the court denied these motions.

■ Appellant's first point of error is that the trial court erred when it denied the motion to quash the information because the Texas obscenity law is unconstitutionally overbroad under the Texas Constitution.

Article I, section 8 of the Texas Constitution provides in pertinent part:

Every person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press....

Appellant notes that the first amendment to the U.S. Constitution contains a prohibition against the Congress passing any laws to abridge the freedom of speech or press. Appellant also notes that the United States Supreme Court has found that "obscenity" is not "speech" and, therefore, not subject to the protection of the first amendment. *Miller v. California*, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). However, appellant argues that in the Tex-

as constitutional provision, the use of the language "on any subject," means that it should be interpreted as a grant of broader protection to include even obscenity. Appellant argues that obscenity deals with a "subject," that of human sexual relations, and thus, comes within the language of the Texas Constitution.

On this point, the Court's attention is directed to authority from Oregon and Tennessee. These states also have language in their constitutions saying that every person is free to speak, write, or publish "on any subject." Citation is made to cases from both those states holding their state's obscenity statutes unconstitutional on the basis of their state constitutional language. *State v. Henry*, 302 Or. 510, 732 P.2d 9 (1987) and *State v. Sanders*, No. 87–04921 (Tenn.Crim.App., Sept. 23, 1988) (unpublished). However, we need not resort to sister state authority to interpret Tex. Const. art. I, sec. 8 as it pertains to obscenity.

Former article 527 of the Texas Penal Code [1] is the forerunner of today's commercial obscenity statute that appellant challenges. Like today's statute, it outlawed the sale of magazines having as their dominant theme subject matter that, among other things, appeals to a prurient interest in sex. In the case of *Malone v. State*, 170 Tex.Crim. 231, 339 S.W.2d 666 (1960), as in this case, appellant challenged the commercial obscenity statute on the ground that it was overbroad under Tex. Const. art. 1, sec. 8. The court held that the Texas Constitution did not extend freedom of the press protection to a person who, for the purpose of a sale, knowingly possessed "any magazine containing material which is denounced by penal statute and condemned when measured by application of the following test: 'Whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.'" 339 S.W.2d at 667; section 43.-23 of the Tex. Penal Code is such a statute

1. Ch. 35, sec. 1, 1943 Tex.Gen.Laws 38, 38–39, *repealed by* ch. 399, sec. 1, 1973 Tex.Gen.Laws 883, 960.

denouncing the possession of such material for sale and utilizing the prurient interest test. Thus, in accordance with *Malone v. State,* we hold that the statute is constitutional under Tex. Const. art. I, sec. 8.

We overrule appellant's first point of error.

In its second point of error, appellant contends that the trial court erred in denying its motion to suppress.

■■■ At the outset, we note that where the materials sought to be seized may be protected by the U.S. Constitution's first amendment, the requirements of the fourth amendment must be applied with "scrupulous exactitude." *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). *However, this does not mean that an application for a warrant to seize books or films must be evaluated under a "higher" standard of probable cause than that used in other areas of fourth amendment law. New York v. P.J. Video, Inc.,* 475 U.S. 868, 874, 106 S.Ct. 1610, 1614, 89 L.Ed.2d 871 (1986). In the *New York* case, the court held that the same standard of probable cause should be used to evaluate warrants authorizing seizure of materials presumptively protected by the first amendment as that used to review warrant applications generally. *Id.* at 875, 106 S.Ct. at 1615. The court, quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), sets out the standard as follows:

" '[T]he term "probable cause,". . . . means less than evidence which would justify condemnation. . . . It imports a seizure made under circumstances which warrant suspicion.' [*Locke v. United States,* 7 Cranch 339, 348 [11 U.S. 339, 348, 3 L.Ed. 364] (1813).] . . . Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision.

.      .      .      .      .

"The task of the issuing magistrate is simply to make a practical, common-sense *decision* whether, given all the circumstances set forth in the affidavit be-

fore him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing,]' [*Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 763, 4 L.Ed.2d 697 (1960),] that probable cause existed." *Id.,* 462 U.S., at 235, 238–239, 103 S.Ct., at 2330, 2332–33.

*New York,* 475 U.S. at 876, 106 S.Ct. at 1615.

In the *New York* case, the court responded to the contention that since the seizure involved all copies of the films that the police were able to find, concerns about the seizure constituting a prior restraint on free speech called for a "higher hurdle on the evaluation of reasonableness [of the seizure]" as mentioned in *Roaden v. Kentucky,* 413 U.S. 496, 504, 93 S.Ct. 2796, 2801, 37 L.Ed.2d 757 (1973). The court explained that its reference in *Roaden* to a "higher hurdle of reasonableness" was:

not intended to establish a "higher" standard of probable cause for the issuance of a warrant to seize books or films, but instead related to the more basic requirement, imposed by that decision, that the police not rely on the 'exigency' exception to the fourth amendment warrant requirement, but instead obtain a warrant from a magistrate who has " 'focused searchingly on the question of obscenity.' " [*Roaden,* 413 U.S.] at 506, 93 S.Ct., at 2802 (1973), quoting *Marcus v. Search Warrant,* supra, 367 U.S. [717], at 732, 81 S.Ct. [1708], at 1716 [6 L.Ed.2d 1127 (1961) ].

*New York,* 475 U.S. at 876, 106 S.Ct. at 1615.

■ Thus, to analyze the issuance of the search warrants in the instant case, pursuant to the *New York* case, applying the same standard of probable cause used to review warrant applications generally, we must determine if the magistrate had a substantial basis for concluding that probable cause existed after having focused searchingly on the question of obscenity.

We find that the magistrate, after having focused searchingly on the question of obscenity, did have a substantial basis for concluding that probable cause existed that the magazines seized were being possessed with the intention to promote obscenity in violation of Tex. Penal Code Ann. sec. 43.23 (Vernon Supp.1989).

The first affidavit submitted by Officer Cox on September 14 gave a detailed, factual description of the merchandise on sale at appellant's premises, including sexual novelties and movies depicting homosexual and heterosexual intercourse, oral sodomy, anal sodomy, and male ejaculation, as well as magazines depicting these same activities and visibly categorized into such classifications as "masturbation," "lesbian," and "bondage." Further, in the affidavit, the officer says that he has "observed no materials for sale of a nonsexual nature in the business on this occasion or any prior occasion." With Officer Cox's additional statement that he has viewed hundreds of the magazines in the store and that they "have always contained sexual depictions similar to those described above ... your affiant has observed nothing of a non-sexual nature in their interior," added to the numerous arrests at the premises for obscenity offenses, combined with the magistrate's personal examination of the four purchased magazines, the magistrate had ample basis for his finding of probable cause that other magazines in the adult section of the store which had pictures on their front and back covers depicting oral sodomy, intercourse, anal sodomy, and male and female genitals, would, in fact, be obscene. Further, he directed the police to videotape the stores interior and the front and back covers of magazines bearing these specific depictions. This additional step afforded the magistrate the opportunity to verify with his own eyes the focus of the commercial enterprise and the nature of its merchandise as well as the specific titles of such magazines. It also eliminated any discretion on the part of the police by limiting their videotaping to only magazines depicting the specific acts described.

With this evidence at hand, Officer Cox's first and second affidavits, citing his five years experience with the pornography squad, and stating that he "has viewed hundreds of magazines purported [sic] printed by the same manufacturers and found them always to contain sexual depiction similar to those described above and as found on the covers of those in Exhibit 'A' [sexual intercourse, oral sodomy, anal sodomy, and male ejaculation]," the magistrate rightfully found probable cause that the 83 magazines, identified by title, constituted some evidence of a criminal offense. *See United States v. Bush*, 582 F.2d 1016, 1020 (5th Cir.1978), *where the court held that from the picture and the words on the cover of a film box the manufacturer was declaring that the film contained unmitigated obscenity, and that the magistrate was "entitled to take the manufacturer at his word."*

■ Appellant cites *Price v. State*, 579 S.W.2d 492 (Tex.Crim.App.1979) for the proposition that "you can't judge a book by its cover" in evaluating whether it is obscene. This is true as it pertains to a jury at the guilt/innocence stage, as in *Price*, which is trying a defendant in a case on the merits for violation of the commercial obscenity statute, and, in the process, is attempting to evaluate whether magazines are obscene.

■ There, the court correctly held that it was error for the trial court to prevent the jurors from removing the cellophane wrappers to examine the magazines' entire contents and that by so doing it made it:

impossible for the fact finder at trial to view the entire material before it made the ultimate judgment that, 'taken as a whole the books appealed to the prurient interest' [and] ... to find possible 'literary artistic, political or scientific value,' [Section 43.21(1)(c), Penal Code].

*Price*, 579 S.W.2d at 497.

The *Price* case is also authority that a police officer cannot judge a book by its cover when seizing magazines for evidence following a *warrantless* arrest, because the officer's evaluation provides no step "in the procedure before seizure designed to focus searchingly on the question of ob-

scenity." *Price,* 579 S.W.2d at 495 (quoting) *Marcus v. Search Warrant,* 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127 (1961).

■ However, *in this case,* on both visits to the bookstore, *the police were operating pursuant to a valid search warrant* issued by a magistrate. On both occasions the magistrate had reflected and deliberated whether there was probable cause to believe the materials he made the subject of the search warrant were obscene. On both occasions, having found probable cause, the magistrate specifically prescribed, in the case of the first search warrant, the materials to be examined, and, in the case of the second search warrant, the material to be seized.

It should be noted, that in *Price,* the court recognized the distinction between what is necessary for a finding of obscenity under Tex. Penal Code Ann. sec. 43.-21(a)(1) (Vernon 1989) and what is necessary for a finding of *probable cause* that a publication is obscene. *The court found that, on the strength of having examined the front cover of the magazine, "EZE TIMES," which depicted a partially nude female performing fellatio on a nude male, and the back cover, which depicted a male performing cunnilingus on a nude female, and the officers' purchase of the magazine from the clerk, that he had probable cause to arrest the clerk. Price v. State,* 579 S.W.2d at 495.

The holdings in *Price* do not invalidate the seizures in this case.

■ The only other question relative to the validity of the seizure concerns the fact that the adversarial hearing on the magazines' obscenity did not occur before the issuance of the search warrant. A line of cases, most recently culminating with *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), has held that where the purpose of the seizure is to remove the books from circulation, there must first be an adversarial hearing rather than an *ex parte* hearing on the question of obscenity before they are seized. However, we find, in this case, that appellant has failed to show that the

purpose of the seizure was to remove the magazines from circulation, as opposed to preserving them for evidence.

In fact, there is evidence in the record to the contrary. The last paragraph of Officer Cox's second affidavit states:

your affiant believes that the above listed magazines are obscene within the meaning of [Section] 43.23 of the Texas Penal Code and that same constitute *evidence* of the offense of possession of obscene material with intent to promote, and therefore seeks a search warrant authorizing the seizure of said magazines and those that are duplicates of said magazines. (Emphasis added.)

The second search warrant issued by the magistrate finds probable cause to support grounds for the issuance of the warrant pursuant to Tex.Code Crim.P.Ann. art. 18.-02(10) (Vernon Supp.1990), which authorizes search warrants to pick up evidence of commission of a criminal offense. Finally, the seizure occurred September 15, 1987. Appellant's motion to suppress and return seized property was not filed until April 19, 1988. While the title of the document refers to return of the seized property, there is no request by appellant for return of the magazines in the body of the document, much less any assertion that the seizure of the magazines is in any way impeding appellant's ability to distribute the subject magazines to the public. The hearing on appellant's motion to suppress was not held until June 2, 1988. There is nothing in the record which indicates appellant made any effort to obtain an expedited hearing on the question of the obscenity or whether the State's possession of the magazines was blocking the legitimate distribution of nonobscene expressive material.

In addressing this question, the court in *New York* said:

We also note that the burden is on the defendant to make a pretrial showing of a "substantial restraint" if he wishes to escape the rule of *Heller, supra,* that a mere seizure to preserve evidence does not impose on the State a duty to conduct an adversary hearing of the sort de-

scribed in *Marcus, supra.* Respondents made no such pretrial showing in this case.

*New York,* 475 U.S. at 876, 106 S.Ct. at 1615.

Further, it is noteworthy that in order for the dissent to reach the conclusion that the magistrate did not "focus searchingly" on whether the magazines were obscene, she must speculate if, when, and for how long the magistrate reviewed the videotape showing the covers of the magazines to be seized. Neither of the parties assert, nor does the record demonstrate, as stated by the dissent, that the court did not review the videotape before issuing the search warrant. Thus, we may only speculate about that question.

We overrule appellant's second point of error.

■ In its third point of error, appellant contends that the trial court erred in not submitting appellant's requested instructions to the jury. Initially, appellant complains of the trial court's failure to define "prurient interest" for the jury. Appellant concedes that under the authority of *Andrews v. State,* 652 S.W.2d 370, 375 (Tex. Crim.App.1983), it is not error for a court in a case such as this not to define "prurient interest" in the court's charge. We do not read the United States Supreme Court's opinion in *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), to require that the definition of "prurient interest" be inserted in the court's charge to the jury. That case did not deal with the court's charge to the jury, but rather with the statutory definition of "prurient interest" in a Washington public nuisance statute. We hold that the trial court did not commit error by refusing to define "prurient interest" in the charge.

■ Second, appellant complains that the trial court erred by not instructing the jury that the phrase "appeals to the prurient interest" refers to the effect the challenged item has on the average person. In its charge, the trial court gave the following definition of "obscenity" to the jury:

"Obscene" means material or a performance that:

(A) the *average person,* applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex.

■ The trial court, by prefacing the definition with "the average person," made it clear that the jury was to determine whether the material "appeals to the prurient interest" from the stand point of the "average person." When the charge refused is substantially the same as that given by the court, no harm is shown. *Philen v. State,* 683 S.W.2d 440, 445 (Tex. Crim.App.1984); *Davis v. State,* 651 S.W.2d 787, 792 (Tex.Crim.App.1983). The trial court did not err in refusing appellant's requested instruction.

■ Finally, appellant complains of the trial court's failure to instruct the jury that "contemporary community standards" are determined by what is "tolerated" in the community as a whole. "Contemporary community standards" is not defined in the Texas Penal Code. Therefore, the court was not required to submit an instruction on it in the charge to the jury. *Mosley v. State,* 686 S.W.2d 180, 182 (Tex.Crim.App. 1985); *Andrews v. State* 652 S.W.2d 370, 375 (Tex.Crim.App.1983).

We overrule appellant's third point of error.

We affirm the judgment.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent. In point of error two, appellant contends the mass seizure of magazines was unconstitutional. As part of that point, appellant argues the warrant was invalid because the judge did not "focus searchingly" on the issue of obscenity. I agree.

Sometime in September of 1987, Houston Police Officer Tim Cox went to Eastex 24 Hour News Bookstore in Houston and bought four magazines. Officer Cox prepared an affidavit, attached the four magazines as exhibits, and presented them to a judge for a search warrant. The judge

signed a search warrant that authorized the officer to: (1) seize the four magazines and (2) videotape the front and back covers of all magazines in the adult section whose covers depicted "oral sodomy, actual intercourse, anal sodomy, and actual exhibition of genitals."

Officer Cox executed the warrant. He seized the four magazines and videotaped the front and back covers of 83 other magazines. The officer was limited to videotaping the covers because each magazine was sealed in a cellophane wrapper.

Officer Cox attached the videotape to a statement, which was not sworn, and presented it to the same judge for a second search warrant.[1] The judge notarized the officer's statement and at the same time signed the second search warrant for the seizure of all copies of the 83 magazines. Officer Cox returned to Eastex 24 Hour News Bookstore and seized all copies of 83 titles, about 300 magazines.

The district attorney's office filed a complaint and information against Video News, based on the copies of the 83 magazines seized after the second warrant was executed. None of the charges related to the four magazines seized under the first warrant. Appellant filed a motion to suppress the magazines, which the trial court denied after a hearing. After trial, the jury returned a finding of guilty, and the court fined Video News $5,000.

**I. Was the mass seizure constitutional?**

The police seized all the copies of the 83 titles at Eastex 24 Hour Bookstore. They removed about 300 magazines from circulation. The seizure was constitutionally defective because it involved a seizure of *all* the copies of the magazines without an adversarial hearing on the question of obscenity.

In *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 927, 103 L.Ed.2d 34 (1989), the United States Supreme Court held that when the State confiscates multiple copies of books, the State must first hold an adversarial hearing on their obscenity. *Fort Wayne Books* involved two appeals of the defendant in different cases, one civil and the other criminal.

In cause number 87–614, the criminal case, defendant was charged with a misdemeanor offense of distributing obscene materials. 109 S.Ct. at 922. The obscene materials on which the charge was based were purchased by an officer, not seized. *Id.* at 927. In the criminal case, defendant argued that he was entitled to a prompt, post-arrest, adversary hearing on the question of obscenity of the materials he was charged with distributing. The Supreme Court overruled the contention for two reasons: (1) defendant did not ask for a prompt, post-arrest, adversary hearing on the question of obscenity; and (2) the Court said, "unlike No. 87–470, in this case, there was no seizure of any books or films...." *Id.*

In cause number 87–470, the civil case, the same defendant was sued under the state Racketeer Influenced and Corrupt Organizations Act (RICO). In that case, the State sought injunctive relief under a civil statute that included forfeiture. The State alleged in its petition that there was probable cause to believe that defendant had violated the state RICO laws. 109 S.Ct. at 921. After an *ex parte* hearing, the trial court ordered immediate seizure of the bookstore and its contents. In the civil case, defendant argued that the seizure of all copies of the magazines was unconstitutional. The Supreme Court sustained the point and reversed, saying

> While a single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause, the publication may not be taken out of circulation completely until there has been a determination of obscenity after an adversary hearing.

109 S.Ct. at 927. Only after an adversarial hearing, may the State seize multiple copies of books. *See also A Quantity of*

---

1. The judge could not have viewed the videotape as part of the executed affidavit. The officer's affidavit is dated September 15, 1987, and bears a time stamp of 4:10 p.m. The second warrant was dated September 15, 1987, and bears a time stamp of 4:10 p.m.

*Copies of Books v. Kansas*, 378 U.S. 205, 210, 84 S.Ct. 1723, 1725, 12 L.Ed.2d 809 (1964).

The United States Supreme Court has repeatedly said that an ex parte hearing will not justify a large-scale seizure of books. *New York v. P.J. Video, Inc.*, 475 U.S. 868, 873, 106 S.Ct. 1610, 1614, 89 L.Ed.2d 871 (1986); *Heller v. New York*, 413 U.S. 483, 492–93, 93 S.Ct. 2789, 2794–95, 37 L.Ed.2d 745 (1973); *Roaden v. Kentucky*, 413 U.S. 496, 502, 93 S.Ct. 2796, 2800, 37 L.Ed.2d 757 (1973); *A Quantity of Copies of Books v. State of Kansas*, 378 U.S. 205, 212–13, 84 S.Ct. 1723, 1726–27, 12 L.Ed.2d 809 (1964). The requirement of a pre-seizure adversarial hearing protects the public from the abridgement of its right to unobstructed circulation of non-obscene materials. *Quantity of Books*, 378 U.S. at 213, 84 S.Ct. at 1727.

The United States Supreme Court insists that we carefully scrutinize any large-scale seizure of books, films, or other materials that are presumptively protected under the first amendment. *Heller*, 413 U.S. at 491, 93 S.Ct. at 2794. Here, the magistrate did not conduct an adversarial hearing to determine whether there was probable cause that the 83 magazines were obscene. Instead, he had an ex parte hearing with the officer that lasted less than 60 seconds.

Under *Wong Sun v. U.S.*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963), appellant argues that all the magazines must be suppressed because they are the materials obtained as a direct result of an unlawful arrest. I agree.

II. Did the judge focus on the issue of obscenity?

The majority holds

We find that the magistrate, after having focused searchingly on the question of obscenity, did have a substantial basis for concluding that probable cause existed that the magazines seized were being possessed with the intention to promote obscenity . . . .

The majority cites *U.S. v. Bush*, 582 F.2d 1016, 1020 (5th Cir.1978) for the proposition that "the magistrate was 'entitled to take

the manufacturer at his word'," and could rely on the cover of a film box to furnish probable cause. Maybe so. That is not the issue here, however. Here, the magistrate did not examine the covers. At best, the magistrate relied on some unrecorded conversation with the officer.

In this record, there is absolutely no evidence that the magistrate "focused searchingly" on the affidavit. The affidavit shows that Officer Cox appeared before the judge, who administered an oath to him at 4:10 p.m. In that affidavit the officer listed 83 magazines by name, and said that the attached videotape of the covers of the magazines showed they were obscene. At precisely the same moment the judge administered the oath to the officer, 4:10 p.m., the judge signed the search warrant.

At the hearing to suppress, the officer confirmed that he signed his affidavit at 4:10, the same moment the judge signed the warrant. I do not think there was any focus at all on obscenity, much less a searching focus, on the affidavit or the videotape of the covers of 83 magazines.

The officer's written statement did not become an affidavit until the judge administered the oath. The judge was limited to finding probable cause in the officer's affidavit and its attachment. He could not rely on unrecorded conversations or unsworn written statements to reach a decision on probable cause. On this record, it was impossible for the judge to focus searchingly on the affidavit and the attached tape in the time between signing the officer's affidavit and signing the warrant.

The majority says the dissent must speculate if, when, and how long the judge focused on the affidavit and the attached videotape. Op. 347. No speculation was necessary. I merely read the documents. The affidavit and the warrant show on their face that they were both executed at the same time. The judge could hardly focus searchingly on the affidavit before it became an affidavit. Before the statement was sworn, it was not an affidavit.

Where the State asks for authorization to seize presumptively protected material,

the magistrate should administer the warrant requirements to leave as little as possible to the discretion or whim of the officer. *Zurcher v. Stanford Daily,* 436 U.S. 547, 564, 98 S.Ct. 1970, 1980, 56 L.Ed.2d 525 (1978). The magistrate cannot issue a warrant to seize obscene materials, relying solely on the judgment of the arresting officer that the materials are obscene. *Id.* at 565, 98 S.Ct. at 1981; *Price v. State,* 579 S.W.2d 492, 492 (Tex.Crim.App.1979).

We should sustain appellant's second point of error and reverse the judgment.