OPINION.
{¶ 1} The appellant, Connie McClanahan, appeals the December 11, 2002 judgments of the Municipal Court of Tiffin, Seneca County, Ohio, finding her guilty of possession of drug paraphernalia and of possession of marijuana.
 {¶ 2} On January 25, 2002, Detective Don Joseph of the Seneca County Sheriff's Office requested that a search warrant be issued for the premises at 6810 North Township Road 190 in Greensprings, Ohio, where McClanahan resided. In support of this request, Detective Joseph submitted a sworn affidavit. In this affidavit, Detective Joseph stated that he was currently assigned to the METRICH Drug Enforcement Unit, received specialized training in the investigation of narcotics related offenses, and was experienced in investigating drug and other felony offenses. Detective Joseph also provided information in this affidavit regarding various occurrences between August, 1993, and March, 2001, involving a person by the name of John Fitzpatrick, one of which also involved McClanahan. The affidavit further included the following paragraphs:
6. 01-16-02 the Sheriff's Office received information from aconfidential source that John W. Fitzpatrick is currently involved inillegal drug trafficking and was overheard ordering up six pounts [sic]of marijuana from a source in Toledo, Ohio. The confidential sourcefurther gave information implicating Fitzpatrick in the death of hisex-wife Rhonda K. Fitzpatrick on or about 12/26/01 from an overdose ofcocaine. This confidential source indicated John Fitzpatrick is currentlyresiding with Connie M. McClanahan at 6810 North Township Road 190 inGreensprings, Adams Township, Seneca County, Ohio.
 7. On 1-18-02 the Sheriff's Office received a telephone call from Dr.Doug Hoy, reference a patient by the name Connie McClanahan. Dr. Hoyreported he received a telephone call notifying him that ConnieMcClanahan was providing her prescribed medication, oxycitin [sic], toher boyfriend, John W. Fitzpatrick. Dr. Hoy stated that he intended tonotify his patient, Connie McClanahan, at her next office visit, that hewould no longer prescribe narcotic medication for her.
 8. 01-24-02 affiant conducted surveillance on the residence at 6810 N.TR 190 in Greensprings, Ohio. During this surveillance a curbside coverttechnique was employed which resulted in the discovery of suspectedmarijuana. On 01-24-02 this material was tested by Inspector Bob Wilsonof the Seneca County Sheriff's Office and was found to contain 2marijuana stems and a small amount of foliage of marijuana.
 {¶ 3} Based upon this affidavit, the municipal court judge issued the requested search warrant for the premises and any persons or vehicles found thereon.
 {¶ 4} The search warrant was executed on McClanahan's home on January 26, 2002. During this search, the police recovered small amounts of marijuana and drug paraphernalia, which McClanahan admitted belonged to her. As a result, two criminal complaints were filed against McClanahan on May 31, 2002. The first, Case No. 02 CRB 590 A, alleged that McClanahan possessed drug paraphernalia in violation of R.C.2925.14(C)(1), a fourth degree misdemeanor. The second complaint, Case No. 02 CRB 590 B, alleged that McClanahan possessed marijuana in an amount less than 100 grams in violation of R.C. 2925.11(A), a minor misdemeanor.
 {¶ 5} Counsel for McClanahan filed motions to suppress the evidence obtained during the January 26, 2002 search, as well as McClanahan's subsequent statements, in both cases on July 15, 2002. The record reflects that a hearing regarding these motions was scheduled for August 23, 2002. However, no transcript of these proceedings was submitted to this Court, and the trial court did not file a written entry providing its ruling as to these motions. Nevertheless, McClanahan's appellate brief asserts that the trial court overruled her motions to suppress, finding that probable cause existed and that the good faith exception to the warrant requirement provided a sufficient basis to allow this evidence even if the warrant was defective.
 {¶ 6} A trial in these cases was scheduled for October 17, 2002, but this was later changed to a plea hearing. The plea hearing was subsequently rescheduled, and on December 11, 2002, McClanahan pled no contest to the two charges, was found guilty on both, and was sentenced accordingly. This appeal followed, and McClanahan now asserts one assignment of error.
The trial court erred by not granting the defendant's motion tosuppress when there was no probable cause, the facts are stale nor wasthere a good faith excepiton [sic].
 {¶ 7} This Court's analysis of the issues before it begins by noting that the appellee, the State of Ohio, failed to file an appellate brief in this matter. Appellate Rule 18(C) outlines the consequences of the failure of an appellee to file a brief:
If an appellee fails to file the appellee's brief within the timeprovided by this rule, or within the time as extended, * * * the courtmay accept the appellant's statement of the facts and issues as correctand reverse the judgment if appellant's brief reasonably appears tosustain such action.
 {¶ 8} We cannot overemphasize the importance of filing a brief on appeal and caution parties against this neglectful approach to appeals, especially when that party has an obligation to citizens of the State of Ohio. Despite the discretion afforded to this Court, McClanahan's brief has failed to convince us that reversible error occurred in the trial court, and we decline to sustain her assignment of error for the reasons that follow.
 {¶ 9} The Ohio Supreme Court has previously held that
[i]n determining the sufficiency of probable cause in an affidavitsubmitted in support of a search warrant, "[t]he task of the issuingmagistrate is simply to make a practical, common-sense decision whether,given all the circumstances set forth in the affidavit before him * * *there is a fair probability that contraband or evidence of a crime willbe found in a particular place."
State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, quoting Illinois v. Gates (1983), 462 U.S. 213, 238-239. InGates, the United States Supreme Court's seminal case regarding determinations of probable cause to issue search warrants, the Court stated that the definition of probable cause "`means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion.'" Gates, 462 U.S. at 235, quotingLocke v. United States (1813), 11 U.S. (7 Cranch) 339, 348. Thus, "[f]inely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trial, have no place in the magistrate's decision. * * * it is clear that `only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" Gates, 462 U.S. at 235, quoting Spinelli v. UnitedStates (1969), 393 U.S. 410, 419, abrogated by Gates, supra.
 {¶ 10} When reviewing a magistrate's or judge's determination of probable cause justifying the issuance of a search warrant under the totality-of-the-circumstances analysis of Gates, an appellate court must simply "ensure that the magistrate had a substantial basis for concluding that probable cause existed." George, 45 Ohio St.3d at paragraph two of the syllabus. In fact, often a particular case may not be easy to determine when an affidavit demonstrates the existence of probable cause. Accordingly, the issuing judge or magistrate is to be accorded great deference, "and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." Id., citing Gates, supra.
 {¶ 11} Thus, under the totality-of-the-circumstances analysis ofGates, the precise question before this Court in this case is simply whether we can say that Detective Joseph's affidavit provided asubstantial basis for the judge's conclusion that there was a fairprobability that illegal drugs or related paraphernalia would be found in McClanahan's residence. The facts presented in the affidavit submitted to the issuing judge herein make this determination difficult.
 {¶ 12} First, paragraphs one through five of the affidavit involved information far too attenuated in time to contribute to a finding of probable cause to search the residence at the time Detective Joseph made his request. At best, paragraph five indicated that ten months prior to the request for the warrant, John Fitzpatrick, who allegedly resided at the premises, was found to be in possession of 458 grams of marijuana during a traffic stop. However, the most recent incident referred to in the previous four paragraphs occurred in 1997, five years prior to the current request for a search warrant. Thus, these paragraphs contained in the affidavit do not provide probable cause to issue a search warrant for McClanahan's home in 2002.
 {¶ 13} Second, paragraph six, which alleged that a confidential source informed the Sheriff's Office that Fitzpatrick resided at the residence at issue and was currently involved in illegal drug trafficking, failed to mention any information that would indicate the veracity of the source or the basis of that source's knowledge. Nowhere in the affidavit did Detective Joseph state that he was familiar with the source, that the source had worked with him in the past, or that the source had proved reliable in the past. In addition, the affidavit lacked any assertion as to how the confidential source would have been in a position to acquire any knowledge as to Fitzpatrick's participation in drug trafficking or even his current residence. Thus, paragraph six of the affidavit did not provide the judge with a substantial basis for concluding that there was a fair probability that illegal drugs or related paraphernalia would be found in McClanahan's residence given the lack of any indicia that this information was reliable.
 {¶ 14} Third, the seventh paragraph, containing information received from Dr. Doug Hoy that he was informed that McClanahan was giving her prescription medication, oxycontin, to Fitzpatrick, was wholly irrelevant to whether illegal drugs and/or related paraphernalia was in the home. Rather, this paragraph established that McClanahan was in thelawful possession of oxycontin given that Detective Joseph acknowledged that Dr. Hoy informed the Sheriff's Office that he prescribed this medication to her. Thus, the information contained in this paragraph did not provide a fair probability that illegal drugs or related paraphernalia would be found in McClanahan's residence even when placed in conjunction with the other paragraphs of the affidavit.
 {¶ 15} Finally, paragraph eight provided the only relevant information for a determination of probable cause to search McClanahan's home. Here, Detective Joseph attested that the day before he requested a search warrant he conducted surveillance of the subject premises. Upon conducting what the affidavit refers to as "a curbside covert technique," he discovered what appeared to be marijuana. This substance was then tested and was found to consist of two marijuana stems and a small amount of foliage.
 {¶ 16} This statement is the only basis for concluding that there was a fair probability that illegal drugs or related paraphernalia would be found in McClanahan's residence. However, the definition of the term "curbside covert technique" was not explained in the affidavit nor was there any explanation as to how the discovery of it was linked to the subject premises. Thus, whether the discovery of this substance provided a substantial basis for concluding that probable cause existed is highly questionable because where and under what circumstances this substance was found is not readily ascertainable from the use of the term "curbside covert technique."
 {¶ 17} As a result of the foregoing, this Court has serious reservations as to whether the issuing judge had a sufficient basis for determining that probable cause existed. Nevertheless, even if we were to determine that the affidavit did not furnish the judge with a substantial basis for concluding that there was probable cause to search the premises, we would still be compelled to uphold this search based upon the "good faith exception" to the exclusionary rule set forth by the United States Supreme Court, United States v. Leon (1984), 468 U.S. 897, and subsequently adopted by the Ohio Supreme Court, State v. Wilmoth (1986),22 Ohio St.3d 251; see, also, George, 45 Ohio St.3d at 330.
 {¶ 18} In Leon, the Court determined that the exclusionary rule of the Fourth Amendment "should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." George, 45 Ohio St.3d at 330, citing Leon, 468 U.S. at 918-923. The Court in Leon, based this decision on the evils sought to be prevented by the exclusionary rule. In essence, the exclusionary rule was begun as a means to deter willful, or at the very least negligent, police misconduct. Leon, 468 U.S. at 918. Thus, the Court reasoned that barring evidence obtained by officers acting in objectively reasonable reliance on a search warrant, which was later determined to not be based on probable cause due to the error of the issuing magistrate, did not further the purpose of the exclusionary rule. Id. at 921. However, the Court specifically held that the reliance by the officer on the search warrant must be objectively reasonable in order for the good faith exception to apply. Id. at 922-923.
 {¶ 19} The United States Supreme Court determined that certain circumstances may exist that would indicate a lack of good faith on the part of law enforcement officials, which would warrant suppression as an appropriate remedial measure. Id. at 923. Specifically, the Court held that suppression would be appropriate "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." Id. Another such circumstance warranting suppression occurs "in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-JiSales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920
(1979)[.]" Leon, 468 U.S. at 923. The Court further determined that no officer would "manifest objective good faith in relying on a warrant based on an affidavit `so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Id., quoting Brown v. Illinois (1975), 422 U.S. 590, 610-611. Lastly, the Court held that "depending on the circumstances of the particular case, a warrant may be so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid."Leon, 468 U.S. at 923.
 {¶ 20} In the case sub judice, none of the aforementioned circumstances that would render a search pursuant to a warrant inappropriate are present. There has been no allegation or evidence that the information contained in the affidavit was given falsely or in reckless disregard of the truth. Likewise, the affidavit was not so lacking in indicia of probable cause that it would render the officer's belief in its existence entirely unreasonable, especially in light of the fact that Detective Joseph stated that marijuana foliage and stems were recovered during surveillance of McClanahan's home. Furthermore, the warrant was not facially deficient. Rather, it specified the areas to be searched, anywhere illegal drugs or related paraphernalia could be found, and the things to be seized, namely illegal drugs and/or related paraphernalia. Thus, the officers who searched McClanahan's home acted in objectively reasonable reliance on the search warrant. Therefore, the trial court did not err in overruling McClanahan's motions to suppress, and the assignment of error is overruled.
 {¶ 21} For these reasons, the judgments of the Tiffin Municipal Court are affirmed.
Judgments affirmed.
WALTERS, J., and CUPP, J., concur.