[Cite as *State v. Dye*, 2014-Ohio-2547.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 13CA010 |
| BETHANY DYE | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Holmes County Municipal
Court, Case No. CRB 13 055


JUDGMENT:               Affirmed


DATE OF JUDGMENT ENTRY:      June 11, 2014


APPEARANCES:


For Plaintiff-Appellee           For Defendant-Appellant


STEVE KNOWLING             JAMES L. BURDON
Prosecuting Attorney          137 South Main Street
Holmes County, Ohio          Suite 201
164 E. Jackson Street         Akron, Ohio 44308
Millersburg, Ohio 44654

*Hoffman, P.J.*

{¶1} Defendant-appellant Bethany Dye appeals the March 19, 2013 Judgment Entry entered by the Holmes County Municipal Court overruling her motion to suppress. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

{¶2} On January 28, 2013, the Holmes County Dog Warden, Katelyn Lehman, received an email from the local Humane Society outlining concerns a "Mary Ann" had about the condition of dogs and horses kept at Appellant's residence. The Dog Warden contacted Mary Ann Tinlin, who told her the horses on Appellant's property were not cared for and there was a strong odor of ammonia coming from Appellant's residence, where dogs were kept. The Dog Warden had received complaints relating to Appellant's residence in the past.

{¶3} Deputy Dog Warden Michael Phillips visited the property on three separate occasions. He testified there was a strong odor of ammonia from thirty feet away, associated with the buildup of feces and urine.

{¶4} Prior to preparing her affidavit for securing a search warrant, the Dog Warden inquired as to the status of Appellant's kennel license. Appellant had not obtained a current license at the time of the Warden's inquiry. Appellant applied for and received 14 dog tags from the Holmes County Auditor on January 31, 2013.

{¶5} On February 1, 2013, the Dog Warden did an inspection of Appellant's kennels in a garage and outbuilding of her property. The Warden detected a strong smell of ammonia from a buildup of urine and fecal matter. She could see fecal matter from outside the buildings.

{¶6} On February 1, 2013, the Holmes County Dog Warden obtained and executed a search warrant at Appellant's residence and seized approximately seventy-two dogs from thirty-two cages in Appellant's garage.

{¶7} The affidavit of Dog Warden Katelyn Lehman used to secure the search warrant contains three numbered paragraphs,

{¶8} "1. The Holmes County Dog Warden's Department received a complaint on 1-28-13 stating that dogs at the residence listed are not being properly cared for and a strong odor is coming from the home.

{¶9} "2. Deputy Michael Phillips responded to the complaint on 1-28-2013, 1-30-2013, and 1-31-2013. On all occasions there was no answer at the home. Lights were on and cars were in the driveway. Deputy Phillips could hear multiple dogs barking in the home and garage. There was an extremely overwhelming smell of ammonia.

{¶10} "3. The Holmes County Auditor has no record of Bethany (Beth) Dye have [sic] a dog or kennel license for the 2013 year."

{¶11} Appellant was charged with cruelty to animals, in violation of R.C. 959.13(A)(4) and a companion charge concerning prohibitions concerning companion animals, a first degree misdemeanor. Appellant was also provided notice for seizure and impoundment of companion animals, pursuant to R.C. 959.132(C).

{¶12} Appellant filed a motion to suppress on March 4, 2013.

{¶13} An initial hearing was held on the State's notice of seizure and impoundment of companion animals on March 6, 2013. By agreement of the parties, the testimony also covered the search warrant of Appellant's residence. Tr. p. 18.

{¶14} The trial court conducted an evidentiary hearing on the motion to suppress on March 18, 2013[1]. Via Judgment Entry of March 19, 2013, the trial court overruled Appellant's motion to suppress. The trial court held,

{¶15} "I based my review of the judge's decision to issue the warrant under State v. George 45 Ohio St. 3, 325 (1989) and find that the facts presented to the issuing judge, 'provided a substantial basis for the Court's conclusion that there was a fair probability that evidence' of the crime cruelty to animals was located on the premises. Discounting the entirety of the contested paragraph[2] of the affidavit, the balance of the facts set forth are sufficient to establish probable cause."

{¶16} Appellant entered a plea of no contest to the charge of cruelty to animals, in violation of R.C. 959.13(A)(4), on August 28, 2013. The companion charge of prohibitions concerning companion animals was dismissed. The trial court entered sentence accordingly.

{¶17} Appellant appeals, assigning as error:

{¶18} "I. THE APPELLANT'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES WAS VIOLATED BY THE COURT'S DECISION OVERRULING APPELLANT'S MOTION TO SUPPRESS."

I.

{¶19} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress.

---

[1] Appellant's counsel stipulated to the testimony presented at the prior hearing on March 6, 2013 relative to the search of Appellant's residence. Tr. at p. 2.
[2] Appellant contested the first paragraph of the Dog Warden's affidavit.

{¶20} First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592, 621 N.E.2d 726 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶21} As set forth above, the trial court relied upon the Ohio Supreme Court decision in *State v. George*, 45 Ohio St.3d 325 (1989), which held,

{¶22} "The totality-of-the-circumstances test of *Illinois v. Gates, supra,* is concisely set forth in that decision at 238–239, 103 S.Ct. at 2332:

**{¶23}** "' * * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed. *Jones v. United States,* 362 U.S. at 271[, 80 S.Ct. 725, 736, 4 L.Ed.2d 697]. * * * '

**{¶24}** "The *Gates* decision provides considerable elaboration as to the 'fair probability' standard applicable to the magistrate's probable cause determination. We find the following passage particularly instructive:

**{¶25}** "' * * * '[T]he term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation * * *. It imports a seizure made under circumstances which warrant suspicion' [quoting from *Locke v. United States* (1813), 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364]. More recently, we said that 'the *quanta* * * * of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar,* 338 U.S., at 173, 69 S.Ct. at 1309. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. * * * [I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' *Spinelli,* 393 U.S., at 419[, 89 S.Ct. at 590–591]. See Model Code of Pre–Arraignment Procedure § 210.1(7) (Prop. Off. Draft 1972); 1 W.

LaFave, Search and Seizure § 3.2(e) (1978)." (Emphasis added.) *Illinois v. Gates, supra,* at 235, 103 S.Ct. at 2330.

{¶26} "It is also important to note that the totality-of-the-circumstances analysis of *Gates* not only addresses the original probable cause determination of the magistrate but carefully limits the role of a reviewing court as well to that of simply ' * * * ensur[ing] that the magistrate had a 'substantial basis for * * * concluding' that probable cause existed. * * * ' *Id.* at 238–239, 103 S.Ct. at 2332. In this regard, we find the following language especially pertinent to the case before us:

{¶27} "'* * * [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' *Spinelli, supra,* at 419[, 89 S.Ct. at 591]. * * * ' *Gates, supra,* at 236, 103 S.Ct. at 2331.

{¶28} "'We also have said that '[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants,' *United States v. Ventresca,* 380 U.S. 102, 109[, 85 S.Ct. 741, 746, 13 L.Ed.2d 684] 1965). * * * ' *Gates, supra,* at 237, fn. 10, 103 S.Ct. at 2331, fn. 10. See, also, *Massachusetts v. Upton, supra,* at 733, 104 S.Ct. at 2088.

{¶29} "From the foregoing language, it is clear that reviewing courts may not substitute their own judgment for that of the issuing magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant. On the contrary, reviewing courts should accord great deference to the magistrate's determination of probable cause, and

doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Gates, supra,* at 237, fn. 10, 103 S.Ct. at 2331, fn. 10. It is equally important to note that, in this context, 'reviewing court' clearly includes a trial court conducting a suppression hearing as well as the appellate courts, insofar as we are all conducting the same 'after-the-fact scrutiny' of the sufficiency of the affidavit.

{¶30} "Thus, under the totality-of-the-circumstances analysis of *Gates, supra,* the precise question before us in this case is simply whether we can say that agent Buffington's affidavit provided a *substantial basis* for the magistrate's conclusion that there was a *fair probability* that marijuana or related paraphernalia would be found in the defendant's residence. Considering the guidelines for review set forth above, we must answer this question in the affirmative."

{¶31} The record demonstrates Deputy Warden Michael Phillips visited the residence on three separate occasions.  The affidavit avers the animals were in an unhealthy environment evidenced by an obvious odor of ammonia due to a buildup of urine and feces.  The subjective characterization of the odor as extremely overwhelming versus strong is not indicative of bad faith.  Likewise, we find the representation Appellant was not currently licensed was due to the timing of the inquiry, not bad faith.[3] Accordingly, based upon the above, we find the trial court did not err in overruling Appellant's motion to suppress.

---

[3] Appellant secured dog licenses on the last days available to do so and after the Dog Warden had checked on the status earlier that same day.

**{¶32}** The March 19, 2013 Judgment Entry entered by the Holmes County Municipal Court overruling Appellant's motion to suppress is affirmed

By: Hoffman, P.J.

Wise, J.  and

Delaney, J. concur