[Cite as *State v. Stubbs*, 2020-Ohio-3464.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ROCKY STUBBS | : | Case No. 2019CA0020 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 2019CR0025



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 June 23, 2020




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CHRISTIE M. L. THORNSLEY                   APRIL F. CAMPBELL
318 Chestnut St.                           545 Metro Place South
Coshocton, OH  43812                       Suite 100
                                           Dublin, OH 43017

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant Rocky Stubbs appeals the August 7, 2019 decision of the Coshocton County Court of Common Pleas denying his motion to suppress. Stubbs further appeals the trial court's October 25, 2019 judgment of conviction and sentence. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On January 25, 2019, Detective Tim Bethel of the Coshocton County Sheriff's Department approached the trial court for two warrants following a 6-month investigation first involving Charles Kirkpatrick, and in the final month, involving Stubbs. Bethel sought a warrant for the residences of both Stubbs and Kirkpatrick.

{¶ 3}  Bethel's investigation began in July of 2018 using confidential informants to purchase prescription pills from Kirkpatrick. Later in the investigation, Bethel was advised by two different informants Kirkpatrick could get them cocaine from "Rocky" who Kirkpatrick bragged had the highest quality cocaine.

{¶ 4}  The informants advised Bethel they had purchased cocaine through Kirkpatrick in the past, with Kirkpatrick acting as the middleman. The informants were not permitted to travel with Kirkpatrick to Stubbs' home, but rather had to wait at Kirkpatrick's home until he returned with the informants' purchase.

{¶ 5}  On January 24, 2019, Bethel set up a controlled buy. For the transaction, the informants were wired with audio recording devices and given $900 in buy money. The informants and their car were searched for contraband and found free of the same. Once at Kirkpatrick's home, in a turn from normal events, Kirkpatrick accepted a ride from the informants to Stubbs' home, but he still required them to wait in the car.  Officers were

stationed outside both Kirkpatrick's and Stubbs' home surveilling the operation with video recording devices.

{¶ 6}  Officers observed Kirkpatrick entering Stubbs' home alone. He emerged approximately five minutes later and gave the informants their cocaine. Kirkpatrick was heard advising the informants "Rocky" was home alone, was bored, and had asked Kirkpatrick to snort a few lines of cocaine with him.

{¶ 7}  Based on this investigation, on January 25, 2019, Detective Bethel requested warrants to search the homes of Kirkpatrick and Stubbs.

{¶ 8}  The warrant for Stubbs' home was executed on January 29, 2019, following a second controlled buy carried out in the same fashion as the first. Officers located both large and small baggies of cocaine, scales, baggies, cell phones and cash.

{¶ 9}  On February 22, 2019, the Coshocton County Grand Jury returned a three-count indictment charging Stubbs with two counts of trafficking in cocaine, felonies of the third degree, and one count of trafficking in cocaine, a felony of the first degree. The first degree felony trafficking also carried a major drug offender specification and three forfeiture specifications; two for automobiles and one for United States currency all of which were confiscated during a search of Stubbs' home.

{¶ 10} Stubbs pled not guilty to the charge and on May 17, 2019, filed a motion to suppress. On July 31, 2019 the court heard the arguments of the parties and the parties submitted two joint exhibits. No witnesses were called by either party. Joint Exhibit 1 is a copy of the affidavit, search warrant, and return on the warrant of Stubbs' home. Joint Exhibit 2 is the recorded testimony of Detective Bethel taken during his request for the warrants. On August 7, 2019, the trial court denied Stubbs' motion to suppress.

{¶ 11} On October 21, 2019, Stubbs entered pleas of no contest to each count of the indictment and its specifications. The trial court ordered Stubbs to serve 30 months for count one, 30 months for count two, and 11 years for count three with the major drug offender specification. The trial court ordered Stubbs to serve the sentences consecutively.

{¶ 12} Stubbs filed an appeal and the matter is now before this court for consideration. He raises three assignments of error as follow:

I

{¶ 13} "THE TRIAL COURT SHOULD HAVE GRANTED STUBB'S MOTION TO SUPPRESS: A. STUBBS'S WARRANT WAS UNSUPPORTED BY PROBABLE CAUSE: THE AFFIANT DID NOT ESTABLISH THE RELIABILITY OF THE SOURCE OF THE AFFIANT'S INFORMATION, AND THE AFFIANT DID NOT CORROBORATE SOURCE'S INFORMATION THROUGH POLICE INVESTIGATION. B. STUBB'S WARRANT WAS UNSUPPORTED BY PROBABLE CAUSE: THE ONLY STATEMENTS ABOUT CRIMINAL CONDUCT BY STUBBS CAME THROUGH DOUBLE HEARSAY FILTERED TO THE MAGISTRATE, WHICH NEITHER ESTABLISHED ITS TRUTH OR THE RELIABILITY THEREOF. C. STUBB'S WARRANT WAS UNSUPPORTED BY PROBABLE CAUSE: THERE IS AN INSUFFICIENT "NEXUS" BETWEEN STUBBS' ALLEGED CRIMES, THE OBJECTS TO BE SEIZED, AND 332 LOCUST STREET."

II

{¶ 14} "THE GOOD FAITH EXCEPTION DOES NOT APPLY TO CURE THE INSUFFICIENT SEARCH WARRANT IN STUBB'S CASE."

III

{¶ 15} "THE TRIAL COURT ERRED IN FAILING TO MERGE STUBB'S COCAINE OFFENSES."

I

{¶ 16} In his first assignment of error, Stubbs argues the warrant to search his home was unsupported by probable cause for three reasons 1) the affiant did not establish the reliability of affiants' information and did not corroborate that information through investigation; 2) the only statements regarding criminal conduct by Stubbs was double hearsay, and; 3) there was an insufficient nexus between the alleged crimes, objects to be seized, and the place to be searched. We disagree.

Standard of Review

{¶ 17} As stated by the Supreme Court of Ohio in *State v. Leak*, 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

> "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible

evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then "independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶ 18} As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 94 (1996), "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

Probable Cause

{¶ 19} In determining whether there is probable cause for the issuance of a warrant, courts employ a "totality-of-the-circumstances" test. This requires the issuing judge or magistrate "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit * * * including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325, 329 (1989), quoting, *Illinois v. Gates*, 462 U.S. 213, 238 103 S.Ct. 2317, 76 L.Ed2d 527 (1983).

{¶ 20} In *Gates*, supra, the court elaborated upon the "fair probability" standard applicable to the judge or magistrate's probable cause determination:

" * * * '[T]he term "probable cause," according to its usual acceptation, means less than evidence which would justify condemnation * * *. It

imports a seizure made under circumstances which warrant suspicion' [quoting from *Locke v. United States* (1813), 11 U.S. 339, 7 Cranch 339, 348, 3 L.Ed. 364]. More recently, we said that 'the quanta * * * of proof' appropriate in ordinary judicial proceedings are inapplicable to the decision to issue a warrant. *Brinegar*, 338 U.S., at 173 [69 S.Ct. 1302, 93 L.Ed. 1879]. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. * * * [I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' *Spinelli*, 393 U.S., at 419 [89 S.Ct. 584, 21 L.Ed.2d 637]. See Model Code of Pre-Arraignment Procedure § 210.1(7) (Prop. Off. Draft 1972); 1 W. LaFave, Search and Seizure § 3.2(e) (1978)."

*Illinois v. Gates*, supra, at 235.

{¶ 21} Accordingly, the standard for probable cause demands only a demonstration that a fair probability of criminal activity exists, rather than a prima facie demonstration of criminal activity. *State v. George*, 45 Ohio St.3d 325 329, 544 N.E.2d 640 (1989).

Hearsay and Informant Reliability

{¶ 22} Hearsay may serve as the basis for the issuance of a warrant as long as there is a substantial basis for crediting the hearsay. *United States v. Ventresca*, 380 U.S.

102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965). In *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the United States Supreme Court set forth a two-pronged test to determine whether an informant's tip establishes probable cause to issue of a warrant. Under that test, a magistrate must be informed of: (1) the basis of the informants knowledge; and (2) sufficient facts to establish either the informant's veracity or the reliability of the informant's information. *Aguilar*, at 114; *Spinelli*, at 413.

In *Gates*, however, the Court abandoned the *Aguilar-Spinelli* test in favor of a traditional "totality of the circumstances" test for probable cause. *Gates* at 238. Nonetheless, the Court specifically found that those two elements remain " * * * relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233. (Citations omitted.) Thus, the elements of the *Aguilar-Spinelli* test remain relevant.

### The Court Properly Found Probable Cause

{¶ 23} We have reviewed the record, including the recorded testimony of Detective Bethel. While Stubbs accurately argues the affidavit did not outline the reliability of the informants, and that statements regarding criminal conduct were hearsay, these facts do not invalidate the warrant under the facts of this case.

{¶ 24} First, we find the statements by the informants to Bethel – that they had in the past purchased cocaine from Stubbs using Kirkpatrick as a middle man – were

established as credible through and corroborated by independent police investigation during the January 24, 2019 controlled buy.

{¶ 25} The informant's knowledge began with Kirkpatrick and led to Stubbs. During his testimony to obtain the warrant for Stubbs' home Detective Bethel stated:

> These particular informants advised that Kirkpatrick sold cocaine and said in the past the informant had gone to Mr. Kirkpatrick and Mr. Kirkpatrick would go to a guy he called Rock who lived behind the sheriff's office on Locust Street. The informants said Mr. Kirkpatrick bragged about the fact that Rocky's cocaine was better than anyone else's. * * * Then yesterday I set up a $900 purchase. In the past Mr. Kirkpatrick would not allow the informants to ride with him to Rocky's house. But yesterday he accepted a ride to Rocky's.

Joint Exhibit 2.

{¶ 26} Bethel went on to explain Kirkpatrick directed the informants to a home on Locust Street where Bethel had determined Stubbs resided, and which officers had under surveillance. Officers observed Kirkpatrick enter the residence alone and return five minutes later. Kirkpatrick then turned the cocaine over to the informants. He further told them Rocky was home alone, bored, snorting cocaine, and had Kirkpatrick snort a few lines with him.

{¶ 27} This controlled buy provided sufficient facts to establish the reliability of the informants' knowledge. The buy played out exactly as the informants had stated it would

with the exception of Kirkpatrick accepting a ride to Stubbs' home. For the same reason, it established Kirkpatrick's reliability as an unwitting informant.

{¶ 28} Further, the affidavit stated the informants and their car were searched before the controlled buy and no contraband was found. It can therefore be inferred the cocaine recovered by officers after the buy did not originate with the informants. So too, Kirkpatrick did not provide the informants with cocaine until he exited Stubbs' residence. From these facts it may be inferred Kirkpatrick did not have cocaine before entering Stubbs's home, as otherwise he would have sold it to the informants himself. Additionally these facts establish a nexus between Stubbs' crimes and the objects to be seized, further bolster Kirkpatrick's reliability, and create a substantial basis for crediting the hearsay.

{¶ 29} For the forgoing reasons, we find no error in the trial court's probable cause determination. Accordingly, the first assignment of error is overruled.

II

{¶ 30} Stubbs next argues the good faith exception does not apply to cure the insufficient search warrant in this matter. Given our resolution of the first assignment of error, however, we find it unnecessary to address Stubbs' second assignment of error.

III

{¶ 31} In his final assignment of error, Stubbs argues the trial court erred when it failed to merge his cocaine offenses. We disagree.

{¶ 32} R.C. 2941.25 governs multiple counts and states the following:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment

or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 33} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held the following:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors -- the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed

separately, or (3) the conduct shows that the offenses were committed with separate animus.

{¶ 34} The Ruff court explained at ¶ 26:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶ 35} Stubbs was charged with three counts of trafficking in cocaine. He argues that because all of the cocaine was found in one toolbox during the search of his home, all three counts should merge. Specifically, he argues "* * * Stubbs's act was singular: he

had cocaine stashed in a toolbox." Appellant's brief at 16. According to the record in this matter, however, the first two counts of the indictment stemmed from two separate controlled buys, rather than from from anything found in Stubbs' home.

{¶ 36} Counts one and two charged Stubbs under the same code sections, R.C. 2925.03(A)(1) and R.C. 2925.03(C)(4)(d). Count one was based on a controlled buy which took place on January 24, 2019, while count two was a result of a controlled buy which took place on January 29, 2019, shortly before Stubbs was served with the search warrant. State's exhibit 1, indictment.

{¶ 37} Count three charged Stubbs with trafficking under R.C. 2925.03(A)(2) and R.C. 2925.03(C)(4). This count charged Stubbs with preparing for shipment, transporting, delivering, preparing for distribution, or distributing cocaine. Count three arose as the result of the search of Stubbs' home which yielded evidence indicative of preparing cocaine for distribution -- digital scales, baggies, various containers with white residue, 200 grams of cocaine in a toolbox, 9 cell phones, and a large sum of cash.  Indictment, search warrant return.

{¶ 38} Stubbs' crimes therefore were committed separately, on different dates, or involved different conduct. Accordingly, the trial court did not err in failing to merge the charges.

{¶ 39} The final assignment of error is overruled.

{¶ 40} The judgment of the Coshocton County Court of Common Pleas is affirmed.


By Wise, Earle, J.

Gwin, P.J. and

Delaney, J. concur.

EEW/rw