[Cite as *State v. Madison*, 2021-Ohio-103.]

wwCOURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2020 CA 00074 |
| PAUL MADISON | |
| Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
                             Pleas, Case No.  20 CR 1714B

JUDGMENT:                     Affirmed in Part; Reversed in Part and
                             Remanded

DATE OF JUDGMENT ENTRY:       January 19, 2021

APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

JOHN D. FERRERO                         EUGENE O'BYRNE
PROSECUTING ATTORNEY                    101 Central Plaza S
KRISTINE W. BEARD                       Suite 500
ASSISTANT PROSECUTOR                    Canton, Ohio 44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1} Appellant, State of Ohio, appeals the judgment of the Stark County Court of Common Pleas granting the motion to suppress evidence of Appellee Paul Madison. The relevant facts leading to this appeal are as follows.

## STATEMENT OF THE FACTS AND CASE

{¶2} On August 22, 2019, Detective Dadisman applied for a search warrant before a Massillon Municipal Court Judge for the residence of Appellee, located at 1384 Huron Road SE, Massillon, Ohio. Detective Dadisman alleged he had made three controlled buys through a confidential informant either at the residence or with Appellee, under the supervision of the Special Investigations Unit. The judge found probable cause to issue a search warrant for Appellee's residence, the property's curtilage, the enclosed front porch, the adjoining apartment complex, safes, and all lock boxes or containers.

{¶3} Prior to executing the search warrant, Massillon Police officers placed the residence under surveillance. During the surveillance, the officers observed Appellee and Jenna Arthur enter a white Saab and drive away from the residence. At the edge of the allotment, Detective McConnell initiated a traffic stop. Detective Dadisman arrived shortly thereafter and assisted. Both Appellee and Arthur were asked to step out of the vehicle and were detained. Dadisman testified he had been told Appellee had a gun and Dadisman assumed he was armed. Dadisman performed a search of the area for officer safety.

{¶4} Appellee and Arthur were read Miranda warnings, and both were patted down for weapons. Dadisman advised Appellee they had a search warrant for his residence, and they would be detaining him. A vial of cocaine was found on Appellee.

{¶5} During the pat down of Arthur, Detective Dadisman asked if she was in possession of any drugs or weapons. She was combative and did not comply at first. As Arthur was being escorted back to the police cruiser, Dadisman informed Arthur she would be further patted down by a female officer. At this point, Arthur stated she would cooperate and that she had drugs in her possession. Arthur then removed one bag containing 13 baggies of cocaine from her vagina. The bags contained 39.7 grams of cocaine. Appellee, Arthur's father, told the officers that the drugs in Arthur's personal possession belonged to him.

{¶6} Appellee and Arthur were placed under arrest. The Saab was impounded and inventoried. No drugs were found in the vehicle. Arthur was transported to the Massillon City Jail. Detective Dadisman placed Appellee in an unmarked car and returned to Appellee's residence to execute a search warrant. Prior to the search, Appellee advised the officers there were drugs in the bedroom he shared with April Philabaum.

{¶7} When the officers approached the house to execute the search warrant, Philabaum came out of the residence. Dadisman advised Philabaum they had a search warrant for the residence. Officers entered the residence through an unlocked door and commenced the search. The search warrant was executed at approximately 5:23 P.M. on August 22, 2019.

{¶8} During the search, officers found cocaine in a bedroom night stand, a small drawer, and a small safe. They also found drug paraphernalia in Arthur's bedroom. In total, 572.86 grams of cocaine were seized from the residence.

{¶9} On October 4, 2019, Appellee was indicted for six felony counts of Trafficking in and Possession of Cocaine.

{¶10} On November 13, 2019, Arthur filed a motion to unseal the warrant affidavit.

{¶11} On December 4, 2019, Philabaum filed a motion to suppress any and all evidence seized as a result of the execution of the search warrant. Arthur and Appellee joined the suppression motion. Appellee argued the affidavit supporting the warrant was insufficient to establish probable cause to search the residence, the good faith exception should not apply, and that officers lacked reasonable suspicion to stop the vehicle in which Appellee was riding.

{¶12} At the suppression hearing on December 23, 2019, the defense argued that the affidavit in support of the warrant was insufficient to establish probable cause for two reasons. First, the affidavit did not include specific dates of the controlled drug buys. Second, the affidavit did not identify the confidential informant.

{¶13} Counsel for Appellee and Arthur argued that the stop of the vehicle and the detention and pat down of Appellee and Arthur violated the Fourth Amendment because the search warrant did not include Appellee's vehicle, and no reasonable suspicion of criminal activity existed to otherwise justify the stop. Appellee and Arthur also argued the officers had no advanced knowledge that the suspects were armed and therefore could not argue the pat down of Appellee and Arthur was for officer safety.

{¶14} After the presentation of evidence, the State filed a response based on the arguments and the evidence presented at the hearing. The State argued that the affidavit in support was sufficient, and if the court found otherwise, that in the alternative, the good-faith exception applied. The State further argued there were reasonable, articulable suspicions for the stop of Appellee's vehicle, and the stop was valid as being within the vicinity of the search and as incident to the execution of the search warrant. Finally, the

State argued that the drugs which Arthur consensually handed to the officers were otherwise admissible.

{¶15} The defendants filed supplemental briefs setting forth as a new argument that the officers did not have an articulable, reasonable suspicion of criminal activity to effect the traffic stop of Appellee's vehicle.

{¶16} The trial court granted the defendants' motion to suppress. In support of the decision, the trial court found that the affidavit did not contain sufficient facts to support the inferential conclusion reached by Detective Dadisman or to enable the issuing court to conduct an independent review of his conclusions. The trial court further held the affidavit, which did not provide underlying facts regarding the veracity, reliability and basis for Detective Dadisman's suspicions, beliefs, and conclusions. The trial court also determined that the search warrant was facially deficient such that Detective Dadisman could not presume its validity. Therefore, the good-faith exception did not apply.

{¶17} The trial court finally held that the search warrant did not include the authority to stop Appellee's vehicle, and that the officer's testimony did not support the conclusion that the officer had a reasonable, articulable suspicion that the occupants of the vehicle were engaged in criminal activity. The trial court did not specifically address the State's argument that even if the affidavit in support was insufficient, the evidence was otherwise admissible.

**ASSIGNMENTS OF ERROR**

{¶18} On April 6, 2020, Appellant filed a notice of appeal and herein raises the following six Assignments of Error:

{¶19} "I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY GRANTING THE APPELLEE'S MOTION TO SUPPRESS ON NEW GROUNDS.

{¶20} "II. THE TRIAL [sic] ABUSED ITS DISCRETION IN FINDING THAT THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT FOR MADISON'S RESIDENCE USURPED THE JUDGE'S INFERENCE-DRAWING AUTHORITY.

{¶21} "III. THE TRIAL [sic] ABUSED ITS DISCRETION IN GRANTING THE MOTION TO SUPPRESS FINDING THAT THE AFFIDAVIT IN SUPPORT WAS INSUFFICIENT FOR THE REVIEWING COURT TO REASONABLY INFER THAT ILLEGAL NARCOTICS AND EVIDENCE OF DRUG TRAFFICKING WOULD BE FOUND IN MADISON'S RESIDENCE.

{¶22} "IV. THE TRIAL COURT ERRED IN FINDING THAT THE EVIDENCE SHOULD BE SUPPRESSED BECAUSE THERE WAS NO REASONABLE JUSTIFICATION FOR THE TRAFFIC STOP.

{¶23} "V. THE TRIAL COURT ERRED IN FAILING TO FIND IN THE ALTERNATIVE THAT THE GOOD FAITH EXCEPTION TO THE WARRANT REQUIREMENT APPLIED IN THIS CASE.

{¶24} "VI. THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE COCAINE HIDDEN ON ARTHUR'S PERSON WAS OTHERWISE ADMISSIBLE."

### Standard of Review

{¶25} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *See Terry v. Ohio* (1968), 392 U.S.

1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

**{¶26}** Appellate review of a motion to suppress is a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8. The trial court is the finder of fact in evaluating a motion to suppress; therefore, it is in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id*. The trial court's findings of fact must be accepted by an appellate court if they are supported by competent, credible evidence. *Id*. "Accepting facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id*. That is, the appellate court will review the application of the legal standard to the facts *de novo*. *Id*.

**{¶27}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. *State v. Goins*, 5th Dist. Morgan No. 05-8, 2006-Ohio-74, ¶10. First, an appellant may challenge the trial court's finding of fact. *Id*. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. *Id*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. *Id*. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994).

**I.**

**{¶28}** In Appellant's First Assignment of Error, Appellant argues the trial court committed reversible error by granting Appellee's Motion to Suppress on grounds not presented by the Appellee. We disagree.

**{¶29}** A motion to suppress evidence must make clear the grounds upon which the motion is based in order that the prosecutor may prepare his case and the court may know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. *Xenia v. Wallace*, 37 Ohio St.3d 216, 218, 524 N.E.2d 889 (1988). Crim.R. 47 specifies that a motion to the trial court "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." "The Supreme Court [of Ohio] has stated that 'this provision, in the context of the ruling case law and when applied to a motion to suppress evidence obtained by search and seizure, requires that the prosecution be given notice of the *specific legal and factual grounds* upon which the validity of the search and seizure is challenged.' " *State v. Byrnes*, 2nd dist. Montgomery No. 25860, 2014-Ohio-1274, ¶10, quoting *Dayton v. Dabney*, 99 Ohio App.3d 32, 37, 649 N.E.2d 1271 (2d Dist.1994), quoting *Wallace* at 219.

**{¶30}** However, a trial court may expand the scope of a suppression hearing beyond the issues specified by the defendant's motion to suppress "so long as the matters within the expanded scope were material to the suppression sought, and so long as the State had a reasonable opportunity to prepare itself for the hearing." *Byrnes* at ¶12.

**{¶31}** If a trial court grants a motion to suppress based on an issue outside the expanded scope of the motion, the state may not have been given the opportunity to adequately prepare arguments and present evidence on that issue, and the trial court

would err in granting the motion to suppress on that basis. *State v. Skeens*, 5th Dist. Tuscarawas No. 2017 AP 11 0030, 2018-Ohio-1610, ¶16. Therefore, the question is whether the prosecutor had notice of the issue and was given an opportunity to prepare and present arguments on the issue. *Id*.

**{¶32}** In *Dabney*, the court concluded that the trial court interjected "a new issue which was not supported by any evidence whatsoever, and basing its decision to suppress the evidence on th[at] issue * * * was prejudicial error to the city." *Dabney* at 39.

**{¶33}** In this case, Appellee's, Philabaum's, and Arthur's collective suppression motions were based on the inadequacy of the underlying affidavit to establish probable cause, and a lack of a good faith exception. Appellant argues that none of the defendants argued in their joint motions to suppress and/or at the hearing that the affidavit in support of the search warrant usurped the judge's inference-drawing authority. While the trial court does discuss the search warrant usurping the judge's inference-drawing authority, this is because, and the trial court stated, the search warrant lacked sufficient facts to support affiant's conclusions and findings of probable cause. Therefore, we find the state had a reasonable opportunity to prepare and present arguments on the issue of the sufficiency of the facts presented in the affidavit to establish probable cause.

**{¶34}** Appellant's First Assignment of Error is overruled.

## II.

**{¶35}** In Appellant's Second Assignment of Error, Appellant argues the trial court abused its discretion in finding that the affidavit in support of the search warrant for Appellee's residence usurped the judge's inference-drawing authority. We disagree.

**{¶36}** Affidavits that include a factual narrative will inevitably include a number of inferences drawn by the affiant. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶40. The facts upon which those inferences are based must be disclosed in the affidavit to permit a magistrate's independent review. *Id.* The reviewing court must determine whether the inference was " 'so significant as to cross the line between permissible interpretation and usurpation', considering the relevance and the complexity of the undisclosed inference." *Id.* at ¶56.

**{¶37}** Next, the reviewing court must consider the affiant's animus. If the affiant negligently usurped the magistrate's inference drawing authority, then the reviewing court must "excise the inference, insert the omitted underlying facts, and reassess the affidavit for probable cause." *Id.*

**{¶38}** The affidavit states, "[t]he Detective has prior knowledge in the past few months of drug activity taking place at the listed residence and from the residence." State's Exhibit 2. In support of this inference the affiant states, "[a] Confidential informant, along with the controlled monitoring of The Special Investigation Unit, has made three controlled buys from the residence and or the defendant." *Id.* However, it does not discuss the procedure followed for the controlled buys, the detail on whether each buy was made with Appellee, at his residence, or some combination, and does not even disclose dates for the first two buys. We are left with very few facts, just that one "controlled buy" took place either at the residence of Appellee or with Appellee himself on August 22, 2019, and two controlled buys took place at some point in time before August 22, 2019. Finally, the affidavit makes one final inference, "[d]etectives gained the knowledge that PAUL J. MADISON is using this home to sell and or maintain drugs directly from the residence."

*Id.* In order for a magistrate to review this inference, the underlying facts must be disclosed.

**{¶39}** Next, we consider the animus of the affiant. Nothing in the record indicates the lack of factual statements would suggest malfeasance. As such we do not find that the detective intentionally usurped the magistrate's inference-drawing authority. Removing the inferences made in the search warrant, we are left with the factual statements disclosing three incidents the affiant has labeled as "controlled buys" took place on or before August 22, 2019. These buys took place either with Appellee and or at Appellee's residence. There are no underlying facts in the record as to activities consisting of the controlled buy, the dates or time period of the first two controlled buys, and where or with whom each of these controlled buys took place. As such we find, based on the totality of the circumstances, that the trial court did not err in finding that the affidavit in support of the search warrant for Appellee's residence usurped the judge's inference-drawing authority.

**{¶40}** Appellant's Second Assignment of Error is overruled.

**III.**

**{¶41}** In Appellant's Third Assignment of Error, Appellant argues the trial court abused its discretion in granting the motion to suppress evidence obtained from Appellee's residence because the affidavit was insufficient for the reviewing court to reasonably infer that illegal narcotics and evidence of drug trafficking would be found at Appellee's residence. We disagree.

**{¶42}** In the case *sub judice,* Appellant's challenge of the trial court's ruling on Appellee's motion to suppress is based on the third method. Accordingly, this Court must

independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case. More specifically, Appellant is challenging the trial court's conclusion that the search warrant issued for Appellee's residence was not supported by probable cause.

**{¶43}** Trial courts and appellate courts "should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George*, 45 Ohio St.3d 325, 330, 554 N.E.2d 640 (1989), paragraph two of the syllabus; *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The reviewing court is to ensure the magistrate had a substantial basis for concluding that probable cause existed. *Id.*

**{¶44}** "[A]n affidavit for a search warrant must present timely information." *State v. Jones* (1991), 72 Ohio App.3d 522, 526, 595 N.E.2d 485,488. The facts contained in the affidavit must be so closely related to the time of the issue of the warrant as to justify the issuing court's finding of probable cause. *Id.* In order "to determine if the information is stale, the issuing court must consider whether there is a nexus between the alleged crime, the object to be seized, and the place to be searched." *Castagnola* at ¶34. Mere conclusory statements made by the affiant in a search warrant affidavit about the nature of the contraband are themselves insufficient to justify the issuance of a search warrant. *State v. Hollis*, 98 Ohio App.3d 549, 555, 649 N.E.2d 11, 15 (11th Dist. 1994).

**{¶45}** In *State v. Stubbs*, 5th Dist. Coshocton No. 2019CA0020, 2020-Ohio-3464, ¶28, the affidavit clearly detailed the activities and circumstances comprising the controlled buy. "The affidavit stated the informants and their car were searched before the controlled buy and no contraband was found." *Id.* From these facts it can be inferred

the controlled substance did not originate with the defendants. *Id.* Facts like these establish a nexus between a defendant's crimes and the objects to be seized. *Id.*

**{¶46}** In the case *sub judice*, Detective Dadisman's affidavit indicated an active drug investigation of Appellee that a confidential informant has made three controlled buys of cocaine from Appellee and/or Appellee's residence. The most recent taking place on August 22, 2019. The affidavit mostly contained conclusions and very few factual statements. The affiant did state that three "controlled buys" took place, the final one happening on August 22, 2019, four days before the execution of the search warrant. The affidavit did not provide dates for the first two controlled buys. There is no description of the activities constituting the controlled buys from which an inference may be drawn to establish a nexus between a defendant's crimes and the objects to be seized. Therefore, applying the principles noted above and granting due deference to the issuing judge's determination, we find no error in the trial court's determination that the affidavit in support of the search warrant was insufficient for the reviewing court to reasonably infer that illegal narcotics and evidence of drug trafficking would be found in Appellee's residence.

**{¶47}** Appellant's Third Assignment of Error is overruled.

**IV.**

**{¶48}** In Appellant's Fourth Assignment of Error, Appellant argues the trial court erred in finding that the evidence should be suppressed because there was no reasonable justification for the traffic stop. We disagree.

**{¶49}** In the case *sub judice*, Appellant argues there were two justifications for the stop of Appellee and Arthur. The first was that the stop was permissible incident to the

execution of the search warrant. The second was that reasonable suspicion existed that Appellee and Arthur were engaging in criminal activity.

### a. Whether the stop of Appellee and Arthur was permissible incident to the execution of the search warrant

**{¶50}** Appellant argues the trial court erred in granting Appellee's motion to suppress evidence obtained when police initiated a traffic stop detaining Appellee and Arthur.

**{¶51}** The United State Supreme court held, incident to the execution of a search warrant on a house, police officers were justified in detaining a person descending the front steps of the house as they arrived to execute the warrant. *Michigan v. Summers*, 452 U.S. 692, 693, 705-6, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). However, in *Bailey v. United States*, 568 U.S. 186, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013), the United States Supreme Court held that a warrant to search a house did not justify stopping a car that left the house shortly before the execution of the warrant. The Supreme Court explained, "*Summers* recognized that a rule permitting the detention of occupants on the premises during the execution of a search warrant, even absent individualized suspicion, was reasonable and necessary in light of the law enforcement interests in conducting a safe and efficient search." *Id*. This is to ensure that persons at the scene of the search are not disruptive, dangerous, or destructive during the search. *Id*. These concerns are not present when the person detained has already left the property when the search begins. *Id*. Therefore, the Supreme Court held, "[t]he categorical authority to detain incident to the execution of a search warrant must be limited to the immediate vicinity of the premises to be searched." *Id*.

**{¶52}** In *Bailey*, the police watched the defendant leaving the premises enter a car, and drive away from the property. *Id.* After following the car for approximately five minutes, or about a mile, officers pulled the vehicle over. *Id.* The Supreme Court determined Bailey was "detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question." *Id.*

**{¶53}** In this case, the search warrant itself did not include Appellee's vehicle as an area to be searched. Upon arrival at the property to be searched, the officers observed Appellee and Arthur enter a vehicle and drive away.  The officers followed the vehicle, initiating a traffic stop at the end of the housing allotment approximately four blocks away. Officers detained both Appellee and Arthur.  There is no reason in the record to support an inference that he would or could interfere with the warranted search. There was no basis to detain him incident to the execution of the warrant because his circumstances were not within the limits prescribed by *Bailey*. Therefore, we agree with the trial court's finding that the vehicle was not in the immediate vicinity of the place to be searched and therefore was not a permissible incident to the execution of the warrant.

**b. Whether the stop of Appellee and Arthur was justified by reasonable suspicion that he was committing or about to commit an offense.**

**{¶54}** "[A]n investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that 'the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, ¶35, 817 N.E.2d 864, quoting *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 695, 66 L.Ed.2d 621.

**{¶55}** Reasonable suspicion entails some minimal level of objective justification, "that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but

less than the level of suspicion required for probable cause." *State v. Jones* (1990), 70 Ohio App.3d 554, 556-57, 591 N.E.2d 810, 811 (2nd Dist. 1990), citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

**{¶56}** An investigatory stop "must be viewed in the light of the totality of the circumstances" presented to the police officer, "who must react to events as they unfold." *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus; *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The officer, "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant that intrusion" *Terry*, *supra* at 21, but the officer need not provide proof beyond a reasonable doubt that the defendant's conduct has satisfied the elements of the offense. *State v. Willis*, 5th Dist. Licking No. 14 CA 103, 2015-Ohio-3739, ¶25.

**{¶57}** Detective Dadisman testified at the suppression hearing that he made the call to initiate the traffic stop on Appellee and Arthur. He testified that he initiated the traffic stop because the vehicle was far enough away from the residence as not to alert anyone in the residence for the safety of the officers. He also testified there was no other reason for the traffic stop. Specifically, he noted that he did not observe any traffic violations, nor was there any indication that Arthur or Appellee were engaging in drug activity at the time of the traffic stop.

**{¶58}** The trial court granted the motion to suppress the evidence obtained from the traffic stop, finding "the officer admitted that the sole basis of the stop was his belief that the vehicle was within the scope of the search warrant." The trial court also found,

"the vehicle stopped nearly a mile from the residence to be searched was not in the immediate vicinity of the place to be searched or within the scope of the warrant."

{¶59} In considering the totality of the circumstances, we cannot say the trial court erred in finding the traffic stop was not supported by reasonable suspicion of criminal activity.

{¶60} Upon review, we find the trial court did not err in granting Appellee's motion to suppress.

{¶61} Appellant's Fourth Assignment of Error is overruled.

**V.**

{¶62} In Appellant's Fifth Assignment of Error, Appellant argues the trial court erred by failing to find that the good faith exception to the warrant requirement applied in this case. We agree.

{¶63} The Fourth Amendment provides that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." However, in *George*, the Supreme Court of Ohio recognized that "the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989). In other words, if an affidavit lacks probable cause, an exception to the exclusionary rule exists where "'the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate.'" *United States v. Watson*, 498 F.3d 429, 431 (6th

Cir.2007), quoting, *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88, (1984). "This is known as the good-faith exception." *United States v. Rose*, 714 F.3d 362, 367 (6th Cir.2013). *See*, *State v. Dibble*, 10th Dist. Franklin No. 13AP-798, 2014-Ohio-5754, ¶15.

**{¶64}** The good-faith exception to the exclusionary rule is limited in its application. *George*, 45 Ohio St.3d at 331; *United State v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 3421, 82 L.Ed.2d 677 (1984). The *Leon* court cautioned, "[s]uppression remains an appropriate remedy" when the court finds that any one of the following four circumstances exist:

> (1)* * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *"; (2) "* * * the issuing magistrate wholly abandoned his judicial role * * *"; (3) an officer purports to rely upon "* * * a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' " or (4) "* * * depending on the circumstances of the particular case, a warrant may be so facially deficient –i.e., in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid. * * *"

> *George*, 45 Ohio St.3d at 331; *Leon*, 468 U.S.at 923; *Dibble*, 2014-Ohio-5754, ¶16.

**{¶65}** In *State v. Dibble*, the Court observed,

> An affidavit lacks the requisite indicia of probable cause if it is a "bare bones" affidavit. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir.

2005), *citing Leon* at 914-923. The inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than that involved in determining whether an affidavit provides a substantial basis for the magistrate's conclusion of probable cause. *Laughton* at 748, *citing Leon* at 914-23. The Sixth Circuit has defined "bare bones" affidavit as one that states "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Laughton* at 748-49, *citing United States v. Weaver*, 99 F.3d 1372, 1378(6th Cir.1996).

10th

**{¶66}** In the case *sub judice*, the affidavit in support of the search warrant contains an address and detailed description of the residence to be searched. Further, the affidavit of Detective Dadisman states the date of the third controlled buy, and that all three controlled buys either took place at the residence and/or with Appellee. As such, the affidavit was more than just "bare bones." The affidavit did not merely contain suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.

**{¶67}** We find the execution of the warrant and resulting seizure of contraband were within the standards of the "good-faith exception" to the exclusionary rule.

**{¶68}** The Appellant's Fifth Assignment of Error is granted.

**VI.**

**{¶69}** In Appellant's Sixth Assignment of Error, the State argues the legality of the traffic stop was irrelevant since Arthur voluntarily handed the drugs over to the officers during the traffic stop making the drugs otherwise admissible evidence. We disagree.

**{¶70}** Searches and seizures conducted without a warrant, without probable cause, and not incident to lawful arrest, violate the Fourth Amendment to the United States Constitution, and all fruits thereof are subject to suppression. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." *Wong Sun* at 485.

**{¶71}** It is well established a defendant waives his or her Fourth Amendment protection by consenting to a warrantless search. *State v. Barnes*, 25 Ohio St.3d 203, 208, 495 N.E.2d 922 (1986), citing *Davis v. United States*, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946), *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed. 854 (1973). "The standard of proof to show a waiver of Fourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent." *Barnes, supra* at 208-209, citing *Schneckloth, supra* and *United States v. Mendenhal*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

**{¶72}** "Voluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St.3d 234,

241, 1997-Ohio-343, 685 N.E.2d 762, citing *Davis v. United States, supra* at 593-594. Important factors to consider when determining the voluntariness of consent are: (1) voluntariness of the defendant's custodial status; (2) presence of coercive police procedures; (3) extent and level of defendant's cooperation with police; (4) defendant's awareness of her right to refuse to consent; (5) defendant's education and intelligence; and (6) defendant's belief that no incriminating evidence will be found. *State v. Moscoso*, 5th Dist. Muskingum No. CT2018-0012, 2018-Ohio-2877, ¶25, citing *State v. Webb*, 2nd Dist. No. 17676, 2000 WL 84658 unreported (Jan. 28, 2000).

**{¶73}** "Whether a consent to search was voluntary or was the product of duress or coercion, either express or implied is a question of fact to be determined from the totality of the circumstances." *State v. Carothers*, 5th Dist. Tuscarawas No. 2015 AP 04 0017, 2015-Ohio-4569, 47 N.E.3d 483, ¶30, citing *State v. Lett*, 11th Dist. No. 2008-T-0116, 2009-Ohio-2796, ¶32, citing *Schneckloth* at 248-249. Thus this determination is best left to the trier of fact, and will only be reversed upon a showing that it is not supported by competent, credible evidence. *Carothers* at ¶30.

**{¶74}** In *State v. Clark*, 5th Dist. Ashland No. 15-COA-040, 2016-Ohio-4614, the defendant was pulled over. After an initial search of the vehicle, officers determined the glove box was locked. The officer then approached the defendant and asked for the key to the glove box. *Id.* The defendant provided the officer the key. *Id.* The officer found a firearm in the glove box. *Id.* This Court stated that the officer approaching the defendant "with an outstretched hand and asking for the keys" was done so "under the color and authority of his badge and uniform." *Id.* This Court further held the "mere relinquishment of the keys by appellant" is not sufficient to establish voluntary consent. *Id.*

{¶75} In the case *sub judice*, Appellant has conceded Arthur was in custody and advised of her Miranda rights. Detective Dadisman asked Arthur if she was in possession of any drugs or weapons; Arthur did not reply. Detective Dadisman took custody of Arthur, conducted a pat down for officer safety, and did not discover anything. The detective then took Arthur to the police cruiser, where Arthur was advised a female officer would be doing a more thorough pat down of her. At this point Arthur said she would cooperate and presented the officers with the drugs she was hiding.

{¶76} Only after an illegal traffic stop, detention, being subject to one pat down, an arrest, and the threat of a more invasive search did Arthur turn over the drugs which were concealed on her person. Given these facts, the trial court's determination that the consent was not voluntary is supported by competent, credible evidence.

{¶77} We find the trial court did not abuse its discretion in excluding the evidence found on Arthur as "fruits of the poisonous tree" of the unlawful traffic stop as the finding was supported by competent, credible evidence.

{¶78} Appellant's Sixth Assignment of Error is overruled.

{¶79} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this opinion.

By: Wise, J.

Gwin, P. J., concurs.

Hoffman, J., concurs separately.

JWW/br 0105

*Hoffman, P.J., concurring*

{¶80} I concur in the majority's analysis and disposition of Appellant's first, fourth, fifth, and sixth assignments of error.

{¶81} I disagree with the majority's analysis and disposition of Appellant's second and third assignments of error. However, such disagreement does not affect my agreement with the majority's ultimate disposition of the appeal based on the application of the "good faith" exception.